Christian **FULLENKAMP** and
**Hemmelgarn & Sons, Inc.**,

v.

James A. **NEWCOMER** and Dorothy J.
**Newcomer, Appellees**
**(Plaintiffs Below),**

and

**Delbert Mauller and Warren Groscost,**
**Appellees (Defendants Below).**

No. 2–1085A319.

Court of Appeals of Indiana,
Second District.

May 28, 1987.

---

**38**

David L. Kiley, Sr., H. Joseph Certain, Kiley, Osborn, Brown, Kiley, Harker and Rogers, Marion, for appellants.

Malcom M. Metzler, Robert C. Beasley, White, Beasley, Gilkison, Retherford and Buckles, Muncie, for appellees James A. Newcomer and Dorothy J. Newcomer.

John M. Feick, Cross, Marshall, Schuck, De Weese & Cross, Muncie, for appellees Mauller and Groscost.

SHIELDS, Presiding Judge.

Christian Fullenkamp and Hemmelgarn & Sons, Inc. appeal an adverse judgment in favor of James E. and Dorothy J. Newcomer. We reverse.

## FACTS

On October 31, 1980, Fullenkamp, James E. Newcomer, and Delbert Mauller were involved in a multiple-vehicle accident on a two-lane highway in Delaware County, Indiana. Just prior to the accident Newcomer passed Fullenkamp, who was driving an egg truck. After returning to the right-hand lane, Newcomer observed Mauller pull a farm tractor with an attached plow onto the highway. Newcomer braked and came to a stop to avoid hitting the trailing plow. Fullenkamp collided with Newcomer's smaller truck. Newcomer and his wife filed a personal injury suit against Fullenkamp, Fullenkamp's employer, Hemmelgarn, Mauller and Mauller's employer, Warren Groscost.

Prior to trial Mauller and Groscost executed a loan receipt agreement with the Newcomers. By its terms, Mauller and Groscost agreed to loan the Newcomers $20,000 and to participate actively in the trial. In return, the Newcomers agreed diligently to pursue the action against Ful-

lenkamp and Hemmelgarn and to repay the $20,000 loan only if the Newcomers recovered a judgment or obtained a settlement in excess of $40,000 against Fullenkamp and Hemmelgarn or all defendants jointly. The Newcomers also agreed not to execute upon any judgment they obtained against Mauller and Groscost, thus effectively limiting Mauller and Groscost's liability to $20,000.

Prior to trial the court granted the Newcomers' motion *in limine* prohibiting the admission of the loan receipt agreement into evidence or any mention of its existence. During cross-examination, Fullenkamp and Hemmelgarn unsuccessfully attempted to question James Newcomer, Mauller and Groscost regarding the loan receipt agreement and requested permission to admit the agreement as edited by the court for impeachment purposes.[1] Fullenkamp and Hemmelgarn also tendered to the court a final instruction on the loan receipt agreement which was refused.[2] The jury returned a verdict against all defendants and for James and Dorothy Newcomer in the amount of $75,000 and $40,000 respectively. Fullenkamp and Hemmelgarn appeal the adverse judgment.

## ISSUE

Although other issues were raised on appeal, because we reverse, we address only the issue whether the trial court erred in refusing to admit evidence of the loan receipt agreement for impeachment purposes.

## DISCUSSION

■ Loan receipt agreements are devices through which a defendant who is potentially liable to a claimant advances funds in the form of a non-interest loan in return for a promise not to pursue the claim or not to enforce any judgment rendered against the lender/defendant. In exchange for limiting the liability of the agreeing defend-

ant, the plaintiff immediately receives a guaranteed sum rather than awaiting the uncertain outcome of protracted litigation. Our courts have long approved the use of loan receipt agreements as a means of settling litigation prior to trial. *See American Transport Co. v. Central Indiana Rwy. Co.* (1970), 255 Ind. 319, 264 N.E.2d 64; *Northern Indiana Public Service Commission v. Otis* (1969), 145 Ind.App. 159, 250 N.E.2d 378; *Klukas v. Yount* (1951), 121 Ind.App. 160, 98 N.E.2d 227.

■ Approving the use of loan receipt agreements as a settlement tool, however, does not address the issue of their admissibility at trial. In fact, our appellate courts have held loan receipt agreements are not admissible as substantive evidence. *See e.g. Health & Hospital Corp. v. Gaither* (1979), 272 Ind. 251, 397 N.E.2d 589; *State v. Thompson* (1979), 179 Ind.App. 227, 385 N.E.2d 198. However, their preclusion as substantive evidence does not forestall admissibility as impeaching evidence under the proper circumstances.

Our courts have acknowledged the admissibility of loan receipt agreements in certain situations. For example, in *Gray v. Davis* (1982), Ind.App., 434 N.E.2d 146, the administrator of a decedent's estate sued the drivers of two vehicles (and their respective employers) who were involved in a collision with the decedent's vehicle. Prior to trial, a loan receipt agreement was executed between the administrator, the drivers, and one driver's employer. The loan receipt agreement was admitted into evidence during the course of one driver's testimony over the administrator's objection the agreement was inadmissible because the driver testifying would not receive any repayment, whatever the trial's outcome. This court held the agreement was admissible for impeachment purposes because the agreement facilitated the driver's dismissal from the action.

---

1. The trial court edited the agreement pursuant to the authority of *Ohio Valley Gas Inc. v. Blackburn* (1983), Ind.App., 445 N.E.2d 1378.

2. In *City of Bloomington v. Holt* (1977), 172 Ind.App. 650, 361 N.E.2d 1211, this court held a jury instruction given on the loan receipt agreement cured any error which may have occurred by excluding testimony of the agreement.

In *State v. Thompson,* the plaintiff, Thompson, sued the truck driver, the truck owner, and the State of Indiana for injuries he sustained in a collision between his vehicle and a truck. Thompson entered a loan receipt agreement with the truck driver and the truck owner. Thompson agreed to prosecute his claim against the State and to dismiss with prejudice his claim against the agreeing defendants. Thompson further agreed to repay the amount loaned, $225,000, without interest, only to the extent he successfully collected on his claim against the State. Although this court affirmed the trial court's exclusion of the loan receipt agreement from evidence, it did so because neither the truck driver nor the owner testified, and accordingly, the agreement was not offered to impeach the testimony of the agreeing defendants. In rejecting the State's contention the loan receipt agreement was admissible to impeach Thompson because it gave Thompson a contractual interest in the case's outcome, this court stated:

> "a party seeking monetary damages in tort for his injuries is understandably interested in getting as large a recovery as possible; obviously he need not have a loan receipt agreement with a dismissed defendant before he becomes biased in favor of his own case."

385 N.E.2d at 212. The court then expressed its agreement with cases from other jurisdictions which admit loan receipt agreements to impeach the testimony of a witness who has a pecuniary bias as a result of the terms of the agreement. *See Reese v. Chicago, Burlington & Quincy R.R. Co.* (1973), 55 Ill.2d 356, 303 N.E.2d 382; *Bedford School District v. Caron Construction Company* (1976), 116 N.H. 800, 367 A.2d 1051. *See also Webb v. Toncray* (1981), 102 Ill.App.3d 78, 57 Ill. Dec. 757, 429 N.E.2d 874; *Riewe v. Arnesen* (1986), Minn.App., 381 N.W.2d 448.

Our own analysis of the question persuades us there are circumstances when the edited loan receipt agreement is relevant on the issue of witness credibility and,

therefore, is admissible. One such circumstance exists when the loan receipt agreement reveals the witness has an interest in the outcome of the litigation contrary to the interest usually and generally expected. This situation arises when the usual and expected interest of a witness would be adverse to that of a party but, because of the agreement, that adverseness of interest does not exist. In that event, the agreement exposes the witness's potential for bias arising from the unexpected and unusual interest. The failure to disclose the existence of the agreement presents a real danger the fact finder will be misled by remaining uninformed about the commonality of interests existing between the witness and the party. Accordingly, without knowledge of the agreement, the fact finder is hampered in its ability to judge witness credibility based upon bias or prejudice. In short, its exclusion undermines the truth finding function of our system.

■ Those circumstances exist here. The agreeing defendants, Mauller and Groscost, were not dismissed from the case. They sat at the defendants' table with Fullenkamp and Hemmelgarn, participated in voir dire, made opening statements and closing arguments, presented evidence, and examined witnesses. To the jury, Mauller and Groscost appeared as parties with interests adverse to the Newcomers, *i.e.,* they appeared as parties whose interest in the trial's outcome was to be found not liable to the Newcomers. In actuality, however, the loan receipt agreement not only capped Mauller and Groscost's monetary liability but also gave them an interest in having the Newcomers obtain a recovery exceeding $40,000 from Fullenkamp and Hemmelgarn, even at the expense of being included in that judgment. Thus, Mauller and Groscost's interest was not that expected and usual to party defendants. Accordingly, the interest created by the loan receipt agreement was relevant to the credibility of Mauller and Groscost and the trial court erred in excluding evidence of the agreement.[3]

---

**3.** The Newcomers argue the trial court has broad discretion in determining the permissible

scope of cross-examination of witnesses to test witness credibility, *Perkins v. State* (1985), Ind.,

Judgment reversed and this cause remanded for a new trial.

BUCHANAN and STATON, JJ., concur.

483 N.E.2d 1379, and this court can reverse the trial court's decision only for an abuse of discretion. Although we agree with the standard stated by the Newcomers, the discretion of a trial court in limiting the scope of cross-examination does not permit the entire exclusion of evidence to show a witness's bias or prejudice. *Niemeyer v. McCarty* (1943), 221 Ind. 688, 51 N.E.2d 365. (*Overruled on other grounds, Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210.)