**Gerald M. BARBER, Appellant–Plaintiff,**

v.

**COX COMMUNICATION, INC., a/k/a Cox Cable of Michigan City; Cardinal Communications, Inc.; N.G. Gilbert Corporation; and Indiana Bell Telephone Company, Incorporated, Appellees–Defendants.**

No. 25A03–9210–CV–318.

Court of Appeals of Indiana, Third District.

Feb. 28, 1994.

Transfer Denied June 24, 1994.

 

Thomas J. Young, William N. Riley, Young & Riley, Indianapolis, Richard A. Brown, Brown & Brown, Rochester, for appellant-plaintiff.

Thomas J. Trauring, Robert M. Squier, Jr., Fell, McGarvey, Trauring & Wilson, Kokomo, for appellee Cox Communication, Inc.

John C. Muehlhausen, Miller, Tolbert, Muehlhausen, Muehlhausen & Groff, P.C., Logansport, for appellee Cardinal Communications, Inc.

Robert A. Smith, T. Neil Bemenderfer, Mark R. Smith, Bishop, Smith, Bishop & Bemenderfer, Indianapolis, for appellee N.G. Gilbert Corp.

Joset Wright–Lloyd, Legal Dept., Indiana Bell Telephone Co., Inc., Lee B. McTurnan, Wayne C. Turner, Steven M. Badger, McTurnan & Turner, Indianapolis, for appellee Indiana Bell Telephone Co., Inc.

HOFFMAN, Judge.

Appellant-plaintiff Gerald M. Barber appeals from a judgment in favor of appellees-defendants Cox Communication, Inc. a/k/a Cox Cable of Michigan City ("Cox"); Cardinal Communications, Inc. ("Cardinal") and N.G. Gilbert Corporation ("Gilbert") and against appellee-defendant Indiana Bell Telephone Company, Incorporated ("Indiana Bell") in the amount of $200,000.00 plus interest in a complex personal injury action.

Barber raises four restated issues for review:

(1) whether the trial court erred in admitting into evidence a loan receipt agreement between Barber and the City of Peru and Peru Utilities (collectively referred to as "Peru");

(2) whether the trial court erred in allowing Peru to be considered a nonparty;

(3) whether allowing the consideration of Peru as a nonparty resulted in a "double set-off" for Indiana Bell; and

(4) whether the trial court erred in granting Cox and Cardinal's motions for summary judgment.

The facts disclose that in 1981 Peru hired Gilbert to rebuild its electrical transmission lines. In December of 1981, Gilbert placed a new utility pole next to an old utility pole located in the alley behind the Burger Barn restaurant in Peru, Indiana. After removing Peru's lines and equipment from the old pole, Gilbert sawed off the top of the pole. Gilbert left wires belonging to Indiana Bell and Cox attached to the old pole.

Sometime in 1982, Indiana Bell transferred its telephone wires from the old to the new utility pole. The Indiana Bell employee performing the work noticed that the old pole had been cut off at ground level and was supported only by the wires attached to it. He did not, however, report the condition of the old pole to anyone.

In 1985, Cox's cable television franchise in the Peru area was acquired by Cardinal. Both Cox and Cardinal had worked on the old pole before it fell in 1987. Contemplating that the cable television system would be upgraded, Cardinal, with Peru's knowledge, decided to suspend the transfer of its lines from Peru's old utility poles to the new poles. In 1986, a new cable television system was installed by Cardinal who hired JDC, Inc., an independent contractor, to do much of the work. Barber was employed by JDC as a

lineman. On February 17, 1987, Barber's crew began removing the cable system from the old utility pole in the alley behind the Burger Barn. During the interim, from the time the old pole had been cut off at ground level, it had sunk down into the ground approximately five to six inches concealing its dangerous condition. Barber climbed the old utility pole. After cutting the wire that was supporting the pole, the pole fell on top of Barber who was attached to it by his safety belt. Barber sustained severe injuries.

Barber filed a personal injury action naming as defendants Peru, Gilbert, Indiana Bell, Cardinal, and Cox. Cardinal and Cox filed summary judgment motions which the trial court granted on January 24, 1989. On July 31, 1989, Barber entered into a loan receipt agreement with Peru. Peru was dismissed with prejudice on November 17, 1989, without objection by the remaining defendants, Gilbert and Indiana Bell. Gilbert and Indiana Bell later filed motions asking the court leave to file amended answers to include the affirmative defense of nonparty. The court granted the defendants' requests and the court named Peru as a nonparty. The court also determined that the loan receipt agreement could be introduced into evidence. Subsequently, Barber received a $1,000,000.00 jury verdict. Sixty percent (60%) of the fault was attributable to the nonparty Peru, twenty percent (20%) of the fault was attributed to Indiana Bell, and twenty percent (20%) of the fault was attributed to Barber. Pursuant to the jury verdict, the court entered judgment in favor of Barber and against Indiana Bell in the amount of $200,000.00. The court further determined that Barber take nothing by his complaint against Gilbert. Barber now appeals.

Barber contends that the trial court erred when it admitted into evidence the loan receipt agreement, entered into between himself and Peru. Loan receipt agreements are a means by which a defendant who is potentially liable to a claimant advances funds in the form of a noninterest loan in return for a promise not to pursue the claim or not to enforce the judgment rendered against the lender/defendant. *Fullenkamp v. Newcomer*

(1987), Ind.App., 508 N.E.2d 37, 39, *trans. denied.* In exchange, the plaintiff immediately receives a guaranteed sum rather than awaits the uncertain outcome of a trial. *Id.*

■ Evidence regarding a loan receipt agreement is admissible to impeach the lender's credibility. *Manns v. State, Dept. of Highways* (1989), Ind., 541 N.E.2d 929, 934. As explained by the Indiana Supreme Court in *Manns:*

> "In contrast to the inadmissibility of covenants not to sue and covenants not to execute, evidence regarding loan receipt agreements are properly admissible on the issue of the lender's credibility.
>
> '[W]hen a loan receipt agreement is executed between a plaintiff and a defendant, and that defendant, or one of his agents or representatives, appears at trial and testifies for the plaintiff, the loan receipt agreement should be admissible to impeach his testimony. That such a witness would have a pecuniary bias is obvious, for if he testifies persuasively in plaintiff's favor, he will be more likely to recover his loan to the plaintiff.' "

*Id.* at 934 (quoting *State v. Thompson* (1979), 179 Ind.App. 227, 245, 385 N.E.2d 198, 210, *trans. denied* ).

■ Barber contends that pursuant to *Manns,* admission of a loan receipt into evidence for impeachment purposes is permissible only when the plaintiff calls the settling party, or its agents or representatives, in the plaintiff's case-in-chief. Contrary to Barber's assertion, *Manns* should not be so strictly construed. Although Barber did not call any of Peru's employees during his case-in-chief, he elicited favorable testimony during cross-examination.

During Barber's cross-examination, Peru employees Dwight Langer, Ronald See, Paul Hines, and David Harleford denied that Peru had any responsibility for cutting the old utility pole. Further, See testified that Gilbert would have had a reason to cut the old pole in order to gain clearance for the installation of a transformer on the new utility pole. Barber also elicited favorable testimony from Peru regarding the issue of whether he exercised due care in climbing the old

pole. During Gilbert and Indiana Bell's examinations of Peru employees, evidence was presented as to the safety precautions that should be taken before climbing utility poles. Most notably, that if a lineman saw a stump adjacent to an old pole, he should probe down into the ground around the pole to determine its depth and whether the pole was safe to climb. On cross-examination by Barber, Peru employees stated that given the facts in the present case, they would not have necessarily undertaken all the tests they had previously suggested, including probing the base of the pole to check its depth.

Peru's pecuniary interest is obvious, for if it testified persuasively in Barber's favor, the more likely it was to recover its loan. *See Manns,* 541 N.E.2d at 934; *Thompson,* 179 Ind.App. at 245, 385 N.E.2d at 210. Barber's cross-examination placed in issue the credibility of the Peru employees and thereby opened the door to the use of the loan receipt agreement for impeachment purposes. *Cf. Jones v. State* (1986), Ind., 500 N.E.2d 1166, 1169 (party's own witness need not be declared hostile before commencing impeachment). The loan receipt agreement was admissible for impeachment purposes.

Moreover, during Indiana Bell's cross-examination of Langer, he testified as to the existence of the loan receipt agreement, without objection by Barber. On cross-examination, Langer stated that the agreement was a form of "settlement" with Barber and that there was a possibility that Peru's insurance company would be paid back. Having allowed such testimony without objection, Barber cannot now complain that the trial court erred in admitting the loan receipt agreement into evidence. *Cf. Wilson v. Kauffman* (1990), Ind.App., 563 N.E.2d 610, 616, *trans. denied, cert. denied* — U.S. —, 112 S.Ct. 439, 116 L.Ed.2d 458 (admission of medical report harmless after physician's testimony); *Jordan v. Talaga* (1989), Ind.App., 532 N.E.2d 1174, 1191, *trans. denied* (admission of home movie of flood harmless after oral testimony concerning the same event).

Barber suggests that he was prejudiced by the admission of the loan receipt agreement because the agreement contained the terms and the amount of the loan. Generally, the amount of the loan should be deleted from the agreement before it is admitted into evidence. Additionally, if under the facts and circumstances of the case any statements in the agreement were drafted solely for the purpose of "manufacturing evidence" they should be deleted before the loan receipt agreement is admitted into evidence. *See* Strohmeyer, *Loan Receipt Agreements Revised: Recognizing Substance Over Form,* 21 Ind.Law Rev. 439, 441–442, n. 11 (1988), *citing Ohio Valley Gas, Inc. v. Blackburn* (1983), Ind.App., 445 N.E.2d 1378, 1383, *trans. denied.*

■ Here, Barber raised no objection as to any of the statements or terms contained within the agreement. In fact, at the loan receipt agreement hearing, Barber urged the court that if it was to admit the agreement into evidence, then the agreement should be admitted in its entirety. Barber has waived any issue he may have had regarding the prejudicial impact of the admission of the amount and terms of the loan receipt agreement into evidence. *See Dias v. Daisy-Heddon* (1979), 180 Ind.App. 657, 667, 390 N.E.2d 222, 228, n. 1 (where appellants raised no objection at trial and agreed to the inclusion of amount in a loan receipt agreement be admitted into evidence, they waived issue as to the prejudicial effect of the inclusion of settlement amount into evidence).

■ Next, Barber argues that the trial court erred in allowing the settling defendants, Peru, to be named as a nonparty for the purpose of fault allocation. The primary objective of the Indiana Comparative Fault Act was to modify the common-law rule of contributory negligence under which a plaintiff only slightly negligent was precluded from recovery of damages. *Indianapolis Power v. Brad Snodgrass* (1991), Ind., 578 N.E.2d 669, 672; *Bowles v. Tatom* (1989), Ind., 546 N.E.2d 1188, 1190. Rather than bar a plaintiff from recovery entirely, the plaintiff's recovery is reduced by the proportion of fault attributable to him. *Id.* The contributory negligence defense, however, is partially retained as a plaintiff with more than 50% of fault is precluded from recovery. *Id.* The means by which the act's objectives

are reached is the proportional allocation of fault. *Id.*

Barber's reliance on *Bowles v. Tatom* (1989), Ind., 546 N.E.2d 1188, is erroneous. *Bowles* is clearly distinguishable from the present case. In *Bowles,* the defendant neither objected to the dismissal of the other defendants or pleaded a nonparty defense. *Id.* In the present case, Barber entered into the loan receipt agreement with Peru. On November 13, 1989, Barber and Peru filed their stipulation of dismissal with prejudice and the trial court dismissed Peru as a party. Thereafter, Gilbert and Indiana Bell filed leave to amend their answers to each include an affirmative defense naming Peru as a nonparty. The trial court granted Gilbert leave to amend its answer, without objection by Barber, more than two years prior to trial.

■ The policy generally is to liberally allow amendments of pleadings and leave to amend should be given unless the amendment would result in prejudice to the opposing party. *Huff v. Travelers Indemnity Co.* (1977), 266 Ind. 414, 420, 363 N.E.2d 985, 989. The trial court is vested with broad discretion in determining whether to permit amendments to pleadings. *Id.* Additionally, when a claim or defense asserted in the amended pleading arose out of an occurrence that had been set forth in the original pleading, the amendment relates back to the date of the original pleading. Ind.Trial Rule 15(C). The trial court did not abuse its discretion in allowing Gilbert and Indiana Bell leave to file amended answers which included affirmative defenses naming Peru as a nonparty. Moreover, Gilbert and Indiana Bell could not have objected to the voluntary dismissal of Peru as a party. Clearly, Barber and Peru had a right to enter into a settlement agreement. *See eg., State v. Ingram* (1981), Ind., 427 N.E.2d 444, 446; *Amer. Transport v. Cent. Ind. R.R. Co.* (1970), 255 Ind. 319, 323, 264 N.E.2d 64, 66; *Klukas v. Yount* (1951), 121 Ind.App. 160, 166, 98 N.E.2d 227, 229 (Indiana courts have

long approved parties settling litigation through the use of loan receipt agreements).

■ Barber also argues that allowing Peru to be considered as a nonparty results in a double set-off for Indiana Bell. As Barber himself concedes, the trial court's statement of judgment did not result in a double setoff for Indiana Bell. Further, Indiana Bell did not claim entitlement to a *pro tanto* credit for the sums which Barber received under the loan receipt agreement. As the trial court correctly recognized, Indiana Bell is not entitled to a setoff precisely because that would produce a double credit attributable to Peru's fault.

■ Finally, Barber argues that the trial court erred in granting Cox and Cardinal's motions for summary judgment. The purpose of summary judgment is to terminate litigation for which there can be no factual dispute and which can be determined as a matter of law. *Chambers v. American Trans Air, Inc.* (1991), Ind.App., 577 N.E.2d 612, 614, *trans. denied.* This Court's standard of review is the same as that used by the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 994. Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the record. *Wingett v. Teledyne Industries, Inc.* (1985), Ind., 479 N.E.2d 51, 54.[1]

■ Barber contends that material questions of fact exist as to whether Cox and Cardinal were negligent in failing to warn Barber of the dangerous condition of the utility pole. Negligence consists of (1) a duty owed to the plaintiff, (2) a breach of that duty by the defendant, (3) which proximately causes plaintiff's damages. *Peak v. Campbell* (1991), Ind., 578 N.E.2d 360, 361. Whether a duty exists is a question of law for the court and absent a duty, no actionable negligence can arise based on a breach of

---

1. This Court notes that summary judgment for Cox and Cardinal was entered on January 24, 1989, prior to the effective date of the 1991 amendments to Ind.Trial Rule 56; therefore, specific designation of evidence by the parties was not required. *See Jackson v. Blanchard* (1992), Ind.App., 601 N.E.2d 411, 415.

such duty. *Robinson v. Kinnick* (1989), Ind. App., 548 N.E.2d 1167, 1168, *trans. denied.*

 Where the instrumentality causing injury is in the control of the independent contractor or some third party other than the owner or occupier of the property, the complaint contractor's employee must show that the owner/occupier assumed control of the dangerous instrumentality or had superior knowledge of the potential dangers involved; otherwise, the owner/occupier owes no duty to the contractor's employee. *See Howard v. H.J. Ricks Const. Co., Inc.* (1987), Ind.App., 509 N.E.2d 201, 205, *trans. denied; Plan–Tec, Inc. v. Wiggins* (1983), Ind.App., 443 N.E.2d 1212, 1219. Here, Barber does not assert that there was anything dangerous about Cox and Cardinal's cable television wires or their system. Rather, the dangerous instrumentality in this instance is the utility pole which was owned by Peru. Cox and Cardinal as licensees were permitted to attach their equipment to Peru's utility poles. However, they had no right or duty to maintain, replace or exert control over the pole itself nor is there any evidence in the record from which it could be reasonably inferred that they voluntarily assumed these obligations. Despite Barber's contention otherwise, there is no evidence in the record from which it can be inferred that Cox and Cardinal had superior knowledge of this particular utility pole's dangerous condition.

Additionally, as to Cox, it no longer had possession and control of the property and it is not liable for injuries arising therefrom, because it was no longer in a position to prevent such injuries. *See Rogers v. Grunden* (1992), Ind.App., 589 N.E.2d 248, 255, *trans. denied.* Cox transferred any interest it may have had as a licensee in 1985, more than one year prior to Barber's injury.

Barber also alleges that Cox and Cardinal breached a duty to promptly transfer the cable television wires. However, it is undisputed that Peru knew that Cox and Cardinal were upgrading their system and it would be some time before Cox and Cardinal removed their equipment from the old utility poles. The trial court properly granted Cox and Cardinal's motions for summary judgment.

The judgments of the trial court are affirmed.

Affirmed.

STATON and ROBERTSON, JJ., concur.