Leonard D. GILLIAM, Appellant–
Plaintiff,

v.

CONTRACTORS UNITED, INC.,
Appellee–Defendant.

No. 41A01–9407–CV–235.

Court of Appeals of Indiana,
First District.

April 10, 1995.

Thomas J. Young, William N. Riley, Young & Riley, Indianapolis, for appellant.

Richard L. Norris, Mary Jo Hunter Wedding, Nelson A. Nettles, Norris, Choplin & Schroeder, Indianapolis, for appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Leonard D. Gilliam appeals from the trial court's order granting summary judgment in favor of Contractors United, Inc., ("CUI"). Gilliam brought a negligence action against CUI for injuries he sustained when his motorcycle collided with a car parked on the shoulder of the highway in an area under construction. The trial court found that CUI owed no duty to Gilliam as a matter of law and entered summary judgment for CUI.

We reverse and remand.

### ISSUES

Gilliam presents several issues for our review which we restate as follows:

1. Whether CUI owed a duty to Gilliam.

2. Whether the trial court abused its discretion when it allowed CUI to amend its answer to assert a nonparty defense and name as nonparties the State of Indiana and the Indiana Department of Transportation.

### FACTS

On August 29, 1988, Gilliam was seriously injured when his motorcycle collided with a vehicle parked on the shoulder of the highway in a construction area controlled by CUI. At the time of the accident, Gilliam

was traveling south on Interstate 65 ("I–65") in Bartholomew County. I–65 is a four-lane highway with two southbound lanes and two northbound lanes separated by a grass median. Along the edges of the two southbound traveling lanes, there is a four-foot-wide paved left shoulder and a ten-foot-wide paved right shoulder. On the morning of the accident, CUI was resurfacing the left paved shoulder of the southbound lanes pursuant to a contract with the Indiana Department of Transportation ("INDOT").[1] To facilitate its work, CUI installed a southbound left lane closure. CUI placed signs, an arrow-board and cones to close the lane and to direct traffic to the right. At that time, an abandoned vehicle was located on the paved right shoulder within the area under construction.

As Gilliam approached the construction area, he saw warning signs and flashing arrows indicating that the left lane was closed and that motorists should move to the right. Gilliam was already in the right hand lane as he approached, and when he saw the signs he moved onto the right shoulder. As Gilliam came over a hill, he saw the vehicle parked on the shoulder but thought it was moving. When he realized the vehicle was stopped, he attempted to swerve but collided with the vehicle.

On August 27, 1990, Gilliam filed his complaint for damages against the vehicle's owner, CUI, the State of Indiana and INDOT. Gilliam subsequently settled with the State and with INDOT and filed a stipulation dismissing his claim against each with prejudice. The trial court then granted leave for CUI to amend its answer to add the State and INDOT as nonparties. Thereafter, both Gilliam and CUI filed motions for summary judgment, and on March 22, 1992, the court entered summary judgment in favor of CUI.

## DISCUSSION AND DECISION

### Standard of Review

 Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Lucas v. Stavos* (1993), Ind.App., 609 N.E.2d 1114, 1116, *trans. denied.* When reviewing a motion for summary judgment, we apply the same standard as the trial court, and we resolve any doubt as to any fact, or inference to be drawn therefrom, in favor of the party opposing summary judgment. *City of Evansville v. Moore* (1990), Ind., 563 N.E.2d 113, 114. The party seeking summary judgment bears the burden of establishing the propriety of the motion. *Gaboury v. Ireland Road Grace Brethren, Inc.* (1983), Ind., 446 N.E.2d 1310, 1313.

 Summary judgment is generally inappropriate in negligence actions. *State Street Duffy's, Inc. v. Loyd* (1993), Ind.App., 623 N.E.2d 1099, 1101, *trans. denied.* Even if the trial court does not believe that the non-moving party will be successful at trial, summary judgment should not be entered where material facts conflict or where conflicting inferences are possible. *Id.*

### Issue One: Duty

Gilliam contends the trial court erred when it found as a matter of law that CUI owed no duty to Gilliam and granted summary judgment in favor of CUI. We agree.

 On the question of duty, we must determine whether the law recognizes any obligation on the part of a defendant to conform its conduct to a certain standard for the benefit of the plaintiff. *See Pitcock v. Worldwide Recycling Inc.* (1991), Ind.App., 582 N.E.2d 412, 414. Although the existence of a duty is a question of law for the court, the process necessarily includes drawing conclusions as to questions of fact. *Stump v. Indiana Equipment Co.* (1992), Ind.App., 601 N.E.2d 398, 402, *trans. denied.* Our supreme court has held that in determining whether a defendant owed a duty to the plaintiff, we must consider and balance the following three factors: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995.

---

**1.** INDOT was formerly known as the Indiana Department of Highways.

## A. Relationship

■ Gilliam contends that CUI had a duty to maintain its construction area so that it was reasonably safe for the motoring public. In *Koroniotis v. La Porte Transit, Inc.* (1979), Ind.App., 397 N.E.2d 656, this court acknowledged that a contractor performing work on a public highway has a duty to the traveling public to take proper precautions to protect it from a dangerous obstruction in the highway resulting from its work. *Id.* at 659. We reaffirmed that same proposition recently in *State v. Cornelius* (1994), Ind. App., 637 N.E.2d 195, 200, *trans. denied.* In *Cornelius,* a motorcyclist sustained injuries when his motorcycle was struck by a car and he slid into a utility pole. The pole was located on a grass traffic island in a portion of an intersection under construction. The traffic island was originally surrounded by a curb, but to facilitate construction the contractor had removed the curb around the island, laid asphalt and placed a flasher barrier in front of the utility pole. *Id.* at 197. In considering the relationship element of duty, this court held in *Cornelius* that the fact that the motorcyclist was a member of the public using the highway was sufficient to establish the requisite relationship between him and the contractor. *Id.* at 200. Likewise, we conclude here that because Gilliam was a member of the public using I–65, he had a relationship with CUI which would support a duty in negligence.

## B. Foreseeability

The duty of reasonable care "is not, of course, owed to the world at large, but rather to those who might reasonably be foreseen as being subject to injury by breach of the duty." *Thiele v. Faygo Beverage, Inc.* (1986), Ind.App., 489 N.E.2d 562, 574, *trans. denied.* Our supreme court has stated:

> Imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. Thus, part of the inquiry into the existence of a duty is concerned with exactly the same factors as is the inquiry into proximate cause. *Prosser & Keeton on Torts,* § 53 (5th ed. 1984). Both seek to find what consequences of the challenged conduct could have been foreseen by the actor who engaged in it. We examine what forces and human conduct should have appeared likely to come on the scene, and we weigh the dangers likely to flow from the challenged conduct in light of these forces and conduct. *Harper, James & Gray,* The Law of Torts Vol. 3 § 18.2 (2d ed. 1986).

*Webb,* 575 N.E.2d at 997. Here, CUI argues that the lane of passage through the construction area was sufficient and that there were no signs which directed traffic to drive on the shoulder. However, even if we were to accept CUI's argument, the proper inquiry is whether the harm to Gilliam was foreseeable.

■ The evidence shows that the abandoned vehicle was parked on the right shoulder of the southbound lane of I–65. By its act in diverting traffic from the left lane to the right, CUI intended that all traffic use the right hand lane. While CUI did not actually divert traffic onto the shoulder, it did change the traffic pattern.

CUI controlled the construction area. Due to the circumstances created by the construction it was foreseeable that motorists would leave the traveled portion of the highway and attempt to use the right shoulder either for emergency stops or as a travel lane. Considering the presence of an abandoned vehicle on the paved shoulder, and the close proximity of the shoulder to the only open southbound lane, it was also foreseeable that a motorist could collide with the vehicle. Therefore, Gilliam was a reasonably foreseeable victim who was injured by a reasonably foreseeable harm. *See id.*

## C. Public Policy

Finally, we must consider whether public policy concerns weigh in favor of imposing a duty under the circumstances. Gilliam asserts that out of concern for public safety, CUI had a duty to remove the parked vehicle or to warn motorists of its presence on the shoulder. CUI maintains that it owed no duty to Gilliam to remove the vehicle because it had no authority to remove the vehicle. CUI further argues it had no duty to warn Gilliam of a vehicle that was clearly visible,

and that it had no duty to warn Gilliam "not to be where he already knew he was not supposed to be." Brief of Appellee at 31.

■ However, whether CUI had the authority to remove the vehicle goes to the question of whether the general duty to protect Gilliam was breached, not the question of whether the duty existed in the first instance. *See Cornelius*, 637 N.E.2d at 201. Because CUI was a contractor performing construction work on the highway, CUI owed a duty of reasonable care to the motoring public traveling through the construction area.[2] As in *Cornelius*, we can discern no public policy concerns that would preclude imposition of a duty under the circumstances of this case. *See id.* at 201.

We cannot agree with the dissent's contentions that, as a matter of law, Gilliam was not a reasonably foreseeable victim who was injured by a reasonably foreseeable harm and that Gilliam was more than fifty percent (50%) at fault for his injuries. Whether it was foreseeable that Gilliam would continue to drive on the shoulder after he saw the vehicle concerns the issue of proximate cause. Further, the extent to which Gilliam's own actions may have caused his injuries involves comparative fault. These are questions of fact not appropriate for disposition by summary judgment.

■ Having balanced the three relevant considerations under *Webb*, we conclude that CUI owed Gilliam a duty as a matter of law. Thus, we hold that the trial court erred when it granted summary judgment in favor of CUI on the question of duty.

### Issue Two: Nonparty Defense

The State and INDOT were named as defendants in Gilliam's complaint. Gilliam subsequently settled with those two defendants, and a stipulation of dismissal with prejudice was entered over CUI's objection. CUI then moved to amend its answer and name the State and INDOT as nonparties, and the trial court granted CUI's motion.

Gilliam contends the trial court abused its discretion when it allowed CUI to amend its answer to assert a nonparty defense with respect to the State and INDOT.

■ The trial court is vested with broad discretion in determining whether to permit amendments to pleadings. *Barber v. Cox* (1994), Ind.App., 629 N.E.2d 1253, 1258. Leave to amend pleadings should be liberally granted unless the amendment would result in prejudice to the opposing party. *Id.* In *Barber*, we held that the trial court did not abuse its discretion when it allowed two remaining defendants to file an amended answer and plead a nonparty defense with regard to a former defendant who had settled with the plaintiff. *Id.*

Still, Gilliam maintains that CUI is precluded from naming a settling defendant as a nonparty based on a provision of Indiana's Comparative Fault Act, Indiana Code § 34–4–33–2(a) which states in pertinent part:

'Nonparty' means a person who is, or may be liable to the claimant in part or in whole for the damages claimed but *who has not been joined in the action as a defendant by the claimant.*

(Emphasis added). Gilliam argues that the language of the statute is clear and that because the State and INDOT were in fact previously joined in the underlying action as defendants, they cannot now be named as nonparties. We cannot agree.

■■ Indiana's Comparative Fault Act "provides a scheme for allocating liability among persons whose negligence contributed to an injury." *Templin v. Fobes* (1993), Ind., 617 N.E.2d 541, 544. We agree with CUI that the policy behind our Comparative Fault Act would be thwarted if a plaintiff who settles with one or more joint tort-feasors could then use that settlement to bar any remaining tort-feasors from asserting a nonparty defense.

Such a rule would inevitably lead to manipulation by plaintiffs, who would first settle

---

2. The trial court held and CUI contends that Indiana Code § 9–9–1.1–1 *et seq.*, precludes the imposition of a duty on CUI. However, that general statute merely provides the procedure for owners and law enforcement officers to remove abandoned vehicles. The statute does not obviate the general duty of reasonable care that CUI owes to the motoring public. *See Cornelius*, 637 N.E.2d at 200; *Koroniotis*, 397 N.E.2d at 659.

with judgment-proof tort-feasors who are primarily or completely responsible for a tort, and then proceed against a remaining deep pocket, ultimately focusing the jury's attention on that deep pocket as if the other tort-feasors did not exist.

*Rockrohr v. Norfolk Southern Corp.* (N.D.Ind.1992), 797 F.Supp. 664, 671 (interpreting the Indiana Comparative Fault Act). Our legislature could not have intended such a result. Thus, we conclude the trial court did not abuse its discretion when it granted CUI leave to amend its answer to name the State and INDOT as nonparties.

## CONCLUSION

We hold, as a matter of law, that CUI owed a duty to Gilliam. We further hold that the trial court did not abuse its discretion when it allowed CUI to amend its answer to include the State and INDOT as nonparties. The trial court's order granting summary judgment in favor of CUI is reversed, and this case is remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

KIRSCH, J., concurs.

BAKER, J., dissents with opinion.

BAKER, Judge, dissenting.

While I concur as to issue #2, I respectfully dissent from the majority's disposition of issue #1 regarding the existence of a duty on the part of CUI. The majority's discussion of the three factors giving rise to a duty is accurate. However, I disagree with the majority's application of the foreseeability factor to the facts of this case.

I simply do not believe that CUI could have reasonably foreseen that by directing traffic to proceed in the right lane, Gilliam would use the shoulder of the road as an additional lane for traveling. Moreover, it was also unforeseeable that Gilliam would continue to proceed down the shoulder of the road after he saw the parked vehicle obstructing his path. Contrary to the majority's conclusion, Gilliam was not a reasonably foreseeable victim who was injured by a reasonably foreseeable harm. Hence, because CUI owed no duty to Gilliam, I would affirm

the trial court's grant of summary judgment in favor of CUI. *See Thiele v. Faygo Beverage Inc.* (1986), Ind.App., 489 N.E.2d 562, 574, n. 2, *trans. denied.*

Furthermore, as a matter of law, Gilliam's actions demonstrate that he was more than fifty percent (50%) at fault for his injuries. Thus, under our comparative fault system he is not entitled to any recovery. *See Forbes v. Walgreen Co.* (1991), Ind.App., 566 N.E.2d 90, 91–92.

After considering cases such as this one in which the plaintiff saw the parked vehicle in the shoulder obstructing his path, continued to drive on the shoulder anyway, collided with the vehicle, and then blames his resulting injury on the defendant, it is no wonder people have grown dissatisfied with our present tort system and have called upon the legislature for reform. With recent proposals for tort reform, such as House Bill 1741 which recently passed the Indiana House of Representatives and is now being considered by the Indiana Senate, changes in our tort system may be just down the road.