Michael KOZIOL, Appellant–Plaintiff,

v.

Joseph M. VOJVODA, II,
Appellee–Defendant.

No. 64A04–9507–CV–269.

Court of Appeals of Indiana.

March 18, 1996.

April L. Board, Whalley and Kuchaes, Merrillville, for Appellant.

Patrick J. Galvin, Galvin, Galvin & Leeney, Hammond, for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Plaintiff–Appellant Michael Koziol (Koziol) appeals from a jury verdict in favor of the Defendant–Appellee Joseph M. Vojvoda, II, (Vojvoda) following an automobile accident in which Koziol sustained personal injury.

We affirm.

### ISSUES

Koziol presents several issues for our review which we re-state as follows:

1. Whether the trial court erred when it allowed the investigating police officer to testify that the nonparty, Myrtle Polte, was at fault due to her failure to see Vojvoda's stalled vehicle.

2. Whether the trial court erred by instructing the jury on the issue of contributory fault in a comparative fault case.

3. Whether the trial court erred in modifying one of Koziol's proposed jury instructions and rejecting another.

4. Whether the jury's verdict constituted inadequate damages and was contrary to law.

### FACTS AND PROCEDURAL HISTORY

On November 18, 1989, Koziol sustained the injuries complained of in this lawsuit while a passenger in Vojvoda's automobile. The automobile was struck in the rear by Myrtle Polte.

At approximately 10:20 p.m. on the night of the accident, Vojvoda was headed west-bound on 173rd Street in Hammond, Indiana.[1] He was traveling in the inner-most west-bound lane when his engine suddenly died and his car stalled. Vojvoda brought the automobile to a complete stop, and it was struck by Polte's vehicle approximately 20 seconds later. Polte was also headed west-bound on 173rd Street when suddenly Vojvoda's vehicle appeared in her path of travel. Polte attempted to avoid the collision, but her attempts were unsuccessful. Koziol, who was a passenger in Vojvoda's

---

1. 173rd Street consists of two west-bound lanes of traffic and two east-bound lanes of traffic.

vehicle, sustained serious injuries as a result of the accident.

Koziol filed his complaint against Vojvoda and Polte alleging that both parties were negligent in the operation and/or maintenance of their respective vehicles, and that Koziol sustained injuries as a proximate result of Vojvoda's and Polte's negligence. Vojvoda filed his answer denying all material allegations on March 19, 1993. Vojvoda further raised the comparative fault of Polte as a defense.

Prior to trial, Koziol settled with Polte, and subsequently a stipulated order of dismissal was entered to dismiss Polte with prejudice. Polte was treated as a nonparty at trial. Following a two day trial, the jury returned a verdict for Vojvoda. Koziol now appeals.

### · DISCUSSION AND DECISION

■ Indiana's Comparative Fault Act (hereinafter "the Act") provides a scheme for allocating liability among persons whose negligence contributed to an injury. IND. CODE 34–4–33–1 *et seq.* (1995 Supp.). The Act reflects a legislative determination that fairness can be best achieved by a relative assessment of the parties' respective conduct. *Dickison v. Hargitt,* 611 N.E.2d 691, 697–98 (Ind.Ct.App.1993). Under the Act, the total fault for an accident is apportioned between the plaintiff, defendant and any other negligent person who is properly named a "nonparty." I.C. 34–4–33–5. "Nonparty" is defined by the Act as "a person who caused or contributed to cause the alleged injury, death, or damage to property but *who has not been joined in the action as a defendant.*" I.C. 34–4–33–2(a)(2) (emphasis provided). The burden of pleading and proving a nonparty defense is upon the defendant. I.C. 34–4–33–10.

The primary objective of the Act was to abrogate the harshness of the common law rule of contributory negligence under which even a slightly negligent plaintiff was precluded from recovery. Under the Act, rather than to completely foreclose a plaintiff's recovery, his recovery is reduced by the proportion of fault attributable to him. I.C. 34–4–33–3. In other words, if a plaintiff's conduct satisfies the statutory definition of fault,

he will still be permitted to recover damages, but those damages will be decreased by his proportion of fault. The common law contributory negligence defense is partially retained in that a plaintiff who is more than 50% at fault is precluded from recovery. I.C. 34–4–33–4.

For the sake of clarity, we first address the manner in which Polte became a nonparty. The case law addressing the issue of whether a dismissed party may become a nonparty within the meaning of the Act appears somewhat inconsistent at first blush. In *Bowles v. Tatom,* 546 N.E.2d 1188 (Ind. 1988), the supreme court held that a party dismissed at the close of the plaintiff's case is not a "nonparty" as defined in the comparative fault statute. It is significant to note however that in *Bowles,* the defendant neither objected to the dismissal nor pleaded a nonparty defense. The *Bowles* court advised that in situations such as this, the remaining defendant should oppose the motion to dismiss or request that the ruling be delayed so that the "dismissed" parties remain for purposes of allocation of fault. *Id.* at 1190. However, based on the facts before it, the court held that "[b]ecause the statutory burden of proof is upon the defendant with respect to the nonparty defense, failure to timely present such an objection waives the defense as to the dismissed parties." *Id.*

A few years later in *Handrow v. Cox,* 575 N.E.2d 611 (Ind.1991), the supreme court followed *Bowles,* but held that because the jury attributed no fault to the denominated nonparty, the error was harmless. These cases seem to be in keeping with the definition of "nonparty" which expressly provides that a nonparty is one who has not been previously joined in the action as a defendant. Therefore, a party who was originally a defendant but is subsequently dismissed cannot then be treated as a nonparty.

In *Barber v. Cox Communication, Inc.,* 629 N.E.2d 1253 (Ind.Ct.App.1994), *trans. denied,* Barber entered into a settlement agreement with one of the defendants, Peru. Peru was subsequently dismissed with prejudice, without objection by the two remaining defendants. The remaining two defendants

filed motions asking the court leave to file amended answers to include the affirmative defense of nonparty. The court granted the defendants' request and named Peru as a nonparty. The jury awarded Barber $1,000,000 in damages attributing 60% of the fault to the nonparty. On appeal, Barber relied on *Bowles* and argued that the trial court erred in allowing the settling defendant to be named as a nonparty for the purpose of fault allocation. *Barber*, 629 N.E.2d at 1257. We held that the trial court did not abuse its discretion in permitting the remaining defendants to file amended answers which included the nonparty defense. *Id.* at 1258. We further held that Barber's reliance on *Bowles* was erroneous, specifically saying that

> *Bowles* is clearly distinguishable from the present case. In *Bowles*, the defendant neither objected to the dismissal of the other defendants or pleaded a nonparty defense. In the present case, Barber entered into the loan receipt agreement with Peru. On November 13, 1989, Barber and Peru filed their stipulation of dismissal with prejudice and the trial court dismissed Peru as a party. Thereafter [the remaining defendants] filed leave to amend their answers to each include an affirmative defense naming Peru as a nonparty. The trial court granted [one of the remaining defendant's] leave to amend its answer, without objection by Barber, more than two years prior to trial.

*Id.* at 1258.

More recently in *Gilliam v. Contractors United, Inc.*, 648 N.E.2d 1236 (Ind.Ct.App. 1995), *trans. denied*, we held that when multiple defendants are sued and thereafter the plaintiff enters into settlement agreements with some of the defendants, and those defendants are dismissed with prejudice, the trial court may grant leave to the remaining defendants to amend their answers to raise the nonparty defense. *Gilliam*, 648 N.E.2d at 1240. In so holding, we said that

> the policy behind our Comparative Fault Act would be thwarted if a plaintiff who

settles with one or more joint tort-feasors could then use that settlement to bar any remaining tort-feasors from asserting a non-party defense. 'Such a rule would inevitably lead to manipulation by plaintiffs, who would first settle with judgment-proof tort-feasors who are primarily or completely responsible for a tort, and then proceed against a remaining deep pocket, ultimately focusing the jury's attention on that deep pocket as if the other tort-feasors did not exist.' [citing *Rockrohr v. Norfolk Southern Corp.*, 797 F.Supp. 664, 671 (N.D.Ind.1992) (interpreting the Indiana Comparative Fault Act) ].

*Gilliam*, 648 N.E.2d at 1240–41. Thus, although the definition of "nonparty" appears to expressly exclude those who have been joined in the action as a defendant, we have concluded that our legislature did not intend to mandate that named parties in comparative fault cases cannot revert to nonparty status after being dismissed following settlement. However, the lessons of *Bowles* still apply in that a defendant bears the burden of raising the nonparty defense and failure to do so will result in waiver. *Bowles*, 546 N.E.2d 1188.

In the case before us, Koziol and Polte entered into a settlement agreement prior to trial. Subsequently, Koziol and Vojvoda stipulated to Polte's dismissal from the action. Together with the stipulated motion for dismissal as to defendant Polte, Vojvoda filed a motion entitled "Additional Defenses" wherein he raised the nonparty defense. On the first morning of trial, the court noted that Polte would be added as a nonparty.[2] The nonparty defense was properly raised in this case.

## I. Admissibility of Investigating Officer's Testimony

Koziol contends that the trial court erred when it allowed Officer Randy Fandrei, the investigating officer, to testify regarding the nonparty's degree of fault. At the time of the accident, Fandrei had been employed

---

**2.** The trial court's order on the first day of jury trial contains the following minute: "The Court is advised by counsel that Plaintiff has reached a settlement with Defendant Polte in this cause. The Court orders that Defendant Polte be treated as a non-party for purposes of the jury's determination and counsel are ordered to make no mention that Polte was ever a party to this cause." (R. 205).

with the Hammond Police Department for 20 years and had been an accident investigator for 8 of those years. He estimated that during his tenure as accident investigator, he had investigated approximately 3,000 accidents. After establishing that the area of the accident was well-lit, the following colloquy occurred:

Q. [By the Defendant] Now, do you have an opinion, Officer, as to whether or not a stopped vehicle, a vehicle that was stopped on the highway, such as [the Defendant's] was that night, would have been visible for traffic approaching going west in the same direction?

A. [By Fandrei] Yes, sir.

Q. And do you have an opinion as to the approximate distance that vehicle would have been visible to somebody approaching from the east, as Mrs. Polte was?

A. I would say more than 150 feet, sir.

Q. And did you actually go out and do some studies on that?

A. Usually my procedure when I'm taking an accident report, even after the vehicles have been removed, I finish my accident report, and I observe the intersection itself, the approaching and also going the opposite direction. And due to the fact the roadway is a grade and the National Guard Armory is on the left-hand side as you're going westbound and the lighting conditions, I determined that Mrs. Polte was at fault because she should have seen the vehicle stalled in the lane of traffic.

(R. 516–17). Koziol objected and requested that Fandrei's answer be stricken. Koziol objected on three separate grounds: that the answer was non-responsive; that Officer Fandrei had not been qualified as an expert; and that his opinion spoke to the ultimate question to be decided by the jury and therefore invaded the province of the jury. The trial court allowed the testimony to stand over Koziol's objection but admonished the jury that the statement was Officer Fandrei's opinion based on his investigation.

 Ruling on the admissibility of opinion evidence is a matter left to the sound discretion of the trial court. We will not disturb the decision of the trial court absent an abuse of that discretion. *Osmulski v. Becze,* 638 N.E.2d 828, 835 (Ind.Ct.App. 1994). First, we note that Officer Fandrei was qualified to give his expert opinion. *See* Ind.Evidence Rule 702(a) [3], *See also Osmulski,* 638 N.E.2d at 837 ("expert testimony is admissible when the expert has some special knowledge which would assist the trier of fact in understanding the evidence or deciding a factual issue.") Prior to soliciting Officer Fandrei's opinion, Vojvoda established that Officer Fandrei's training, education and experience provide the foundation required to offer his expert opinion. In addition to Officer Fandrei's eight years of experience as an accident investigator, he also attended several seminars and training sessions on accident reconstruction. During his career, Officer Fandrei investigated over 3,000 accidents. On the day of the accident at issue, Officer Fandrei arrived on the scene a few minutes after the estimated time of the accident. Based on his conversation with the drivers immediately after the accident, his familiarity with the area and his experience, he formed an opinion that Mrs. Polte was at fault.

 Evid.Rule 704(a) provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact." *See also Osmulski,* 638 N.E.2d at 837 (citing *Public Service Indiana, Inc. v. Nichols,* 494 N.E.2d 349, 358 (Ind.Ct.App.1986), *reh'g denied*) (opinion testimony by an expert witness even as to the ultimate fact in issue is not objectionable merely for the reason that it invades the province of the trier of fact)).

Koziol cites *Marks v. Gaskill,* 546 N.E.2d 1245 (Ind.Ct.App.1989), *aff'd on transfer,* 563 N.E.2d 1284 (Ind.1990). In *Marks,* we decided and the supreme court affirmed our deci-

---

**3.** Evid.Rule 702(a) provides the standard for the admission of expert testimony as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

sion that it was reversible error to allow the investigating police officer to testify that the defendant was at fault. *Id.* The affirmative defense of contributory negligence was raised by the defendants. *Id.* On appeal, we reasoned that the improper testimony that the defendant was at fault necessarily implied that there was no contributory negligence on the part of the plaintiff. *Marks,* 546 N.E.2d at 1247.

However, in more recent cases decided under the Indiana Rules of Evidence (effective January 1, 1994), the trend has been to allow expert opinion testimony even on the ultimate issue of the case, so long as the testimony concerns matters which are not within the common knowledge and experience of ordinary persons and the testimony will aid the jury. *See Prange v. Martin,* 629 N.E.2d 915 (Ind.Ct.App.1994), *reh'g denied, trans. denied* (case indicates that police officer's testimony as to cause of accident is admissible so long as expert's opinion was based upon special expertise and not merely on hearsay statements of the parties to the accident). In *Osmulski,* the precise issue of whether an otherwise qualified expert investigating police officer can testify as to who was at fault was not addressed because Osmulski elicited the complained of testimony at trial. Thus, on appeal, we said that a party cannot complain of an error which it invited. *Osmulski,* 638 N.E.2d at 836. However, we did reach the issue of whether it was error to allow plaintiff's expert to testify that defendant failed to use reasonable care. Relying on Evid.Rule 704(a), we held that there was no abuse of discretion in allowing such testimony because the expert witness had knowledge and experience which would be helpful to the jury in understanding the evidence surrounding the accident. *Osmulski,* 638 N.E.2d at 837.

In this case, in addition to speaking with the parties to the accident, Officer Fandrei examined the lighting conditions in the area, completed a thorough accident report, observed the intersection and then based on the grade of the roadway and other factors, formed the opinion that Mrs. Polte was at fault. We find that Officer Fandrei possessed special knowledge which would be helpful to the jury in understanding the evidence surrounding the accident and deciding the factual issues. The trial court did not abuse its discretion in allowing Officer Fandrei to testify as to the fault of the nonparty.

## II. Contributory Fault Jury Instruction

Koziol contends that the trial court erred when it instructed the jury regarding contributory fault. The trial court read the following instruction over Koziol's objection:

> The question of fault on the part of the plaintiff is an issue in this case. If the plaintiff was guilty of fault that proximately contributed to his injury then the plaintiff either will receive no compensation or will receive only partial compensation for his injury. Another instruction will tell you how to determine the effect of any fault of the plaintiff upon your verdict. The defendant has the burden of proving by a preponderance of the evidence that the plaintiff was guilty of such fault.

(R. 191).

The well-settled standard by which we review the tender of jury instructions affords great deference to the trial court's ruling. The manner of instructing the jury lies within the sound discretion of the trial court, whose ruling will not be reversed unless an instruction error is such that, taken as a whole, the charge to the jury misstates the law or otherwise misleads the jury. *Jacobs v. State,* 640 N.E.2d 61, 66 (Ind.Ct.App. 1994), *reh'g denied, trans. denied.* Additionally, the instruction must be a correct statement of the law, be applicable to the evidence adduced at trial and be relevant to the issues the jury must decide in reaching its verdict. *Id.*

Koziol argues that the instruction was confusing and misleading to the jury because contributory negligence was not an issue in the case and there was no evidence presented that would support a theory of Koziol's contributory negligence. The instruction read to the jury is based on Pattern Jury Instruction 9.05, and represents a correct analysis of the role of contributory fault in comparative fault. *See* I.C. 34–4–33–1 *et seq.* While we agree that Vojvoda did not raise the defense of contributory negligence in its

answer, Polte did raise the defense. Although Polte was dismissed from the action prior to trial, the defense of contributory negligence remained noted in the pretrial order. Furthermore, because apportionment of fault among all the parties to an action, including the plaintiff, is the basic underlying premise of the Act, we find no irregularity in the fact that the trial court gave such an instruction. Indeed, the failure to give such an instruction could result in confusion and potentially mislead a jury because under the Act, a plaintiff is barred from recovery if his contributory fault is greater than the fault of all persons whose fault contributed to his damages. I.C. 34–4–33–4. The instruction given just before this instruction informed the jury that the Defendant claimed that Plaintiff's injuries were proximately caused by Plaintiff's own negligence and/or by the negligence of the nonparty. The trial court further instructed the jury that the Defendant had the burden of proving defenses. (R. 190). Reading the instruction at issue together with the other instructions, as we must, we find that it was proper.

■ Koziol also objected to the verdict forms submitted to the jury which allowed the jury to attribute fault to Koziol. For the reasons already stated, we find Koziol's argument without merit. We also note that because the jury found no negligence on the part of Vojvoda, this issue is moot. In cases where the jury finds that the defendant is not negligent in the first instance, there is no need for the jury to allocate fault between the parties. Such an exercise would be meaningless.

The verdict form ultimately signed by the jury required the jury to first determine whether Vojvoda was negligent, and if it found no negligence it was to stop at that stage without proceeding to any allocation of fault. The jury verdict form was proper. *See Evans v. Schenk Cattle Co., Inc.,* 558 N.E.2d 892, 896 (Ind.Ct.App.1990) (finding this type of verdict form proper because it allows the jury an efficient and expedited means to render a favorable verdict for the defendant when it finds no negligence on the defendant's part).

### III. Jury Instructions
#### A.

Koziol contends that the trial court erred when it refused to give its proposed jury instruction number 1. Koziol's proposed instruction reads as follows:

You are instructed that a driver of an automobile proceeding along a roadway or highway in a reasonably prudent manner at night has a right to presume that there will not be an automobile stalled in the roadway or highway without tail lights or brake lights and without the danger signals required by statute being exhibited.

(R. 165). The trial court refused to give Koziol's instruction as proposed and instead modified it as follows:

A driver of an automobile proceeding along a roadway or highway in a reasonably prudent manner has a right to presume, absent notice to the contrary, that others using the roadway or highway will do so in compliance with the law.

(R. 197).

■ The test for reviewing the propriety of the trial court's decision to refuse a tendered instruction is: (1) whether the instruction correctly states the law; (2) whether there was evidence in the record to support the giving of the instruction; and (3) whether the substance of the instruction is covered by other instructions given by the court. *Toops v. State,* 643 N.E.2d 387, 390 (Ind.Ct.App. 1994).

■ First, we note that both the proposed instruction and the instruction that was given to the jury went to the issue of nonparty fault. The portion of the proposed instruction that the trial court modified discussed the law regarding tail lights and brake lights. In the two final instructions directly preceding this instruction, the court read to the jury the relevant statutory provisions in their entirety. Thus, although Koziol's proposed instruction was a correct statement of the law and relevant to the facts, the subject matter of the redacted portions was adequately covered by the court's other instructions. Therefore, we find no error. It is not error to refuse to give an instruction when the subject matter

is substantially covered by other instructions given by the court. *Get–N–Go, Inc. v. Markins,* 550 N.E.2d 748, 751 (Ind.1990).

### B.

Koziol further contends that the trial court erred by refusing to give the jury its proposed jury instruction number 2. Koziol's proposed instruction read as follows:

> You are instructed that a motorist driving on a roadway in a reasonably prudent manner at night who collides with an unlighted automobile is not negligent or at fault as a matter of law for failure to see the unlighted automobile or failure to stop in time to avoid a collision.

(R. 224). The court gave no replacement instruction. Similar to the instruction complained of in subsection A *supra,* this instruction also goes to the issue of non-party fault. However, this instruction does not represent an accurate statement of the law, nor was it supported by the evidence. The proposed instruction suggests that one who collides with an unlighted vehicle while driving in a reasonably prudent manner will never be at fault. This instruction would have likely misled the jury. Whether Vojvoda failed to comply with the law and whether Polte was partially or wholly at fault was an issue left for the jury's determination. We find no error.

### IV. Jury Verdict and Inadequate Damages

Koziol contends that the verdict was in total disregard of the jury instructions given pertaining to fault, comparative fault and damages, and that the jury verdict is against the greater weight of authority. We disagree.

When reviewing an appeal from a negative judgment, we must determine whether the judgment is contrary to law. *Mileusnich v. Novogroder Co., Inc.,* 643 N.E.2d 937, 939 (Ind.Ct.App.1994), *reh'g denied.* A judgment is contrary to law when the evidence is without conflict and leads to but one conclusion which is contrary to that reached by the trial court. *Id.* In determining whether a negative finding is contrary to law, we will neither reweigh the evidence nor reassess the credibility of the witnesses. *Id.*

First, because the jury found against Koziol on the issue of liability, the adequacy or inadequacy of damages is an issue which never came to fruition. The trial court's final instruction 14 was based on the Pattern Jury Instruction general comparative fault instruction. The first sentence of the instruction provides that "[i]f you find the defendant is not at fault, then your verdict should be for the defendant, and no further deliberation of the jury is necessary." (R. 189). Thus, because the jury found that Vojvoda was not at fault, it never reached the apportionment of fault and damages stage. Based on a review of the record on the whole, we do not find that the jury's verdict is contrary to the evidence. The jury had the opportunity to listen to the trial testimony and observe the demeanor of the witnesses, and we will not second-guess it's final determination of fault. Furthermore, in reaching its verdict, the jury followed the instructions given by the court.

### CONCLUSION

Because Officer Fandrei was a properly qualified expert, the trial court did not err in allowing him to offer his expert opinion as to which party was "at fault." The trial court did not err in instructing the jury regarding the effect of a plaintiff's contributory fault in comparative fault, nor did the trial court err in modifying and rejecting Koziol's proposed instructions. Further, the jury's verdict is not contrary to law. The trial court is affirmed in all respects.

BARTEAU and KIRSCH, JJ., concur.