**Dennis MENDENHALL and Tina Mendenhall, Appellants (Plaintiffs Below),**

v.

**SKINNER AND BROADBENT CO., INC. Appellee (Defendant Below).**

No. 49S04–9811–CV–740.

Supreme Court of Indiana.

May 17, 2000.

Kevin P. Farrell, Angela Herod, Indianapolis, Indiana, Attorney for Appellant.

Ross E. Rudolph, James D. Johnson, Evansville, Indiana, Attorney for Amicus Curiae, Defense Trial Counsel of Indiana.

Darla S. Brown, Bloomington, Indiana, Attorney for Appellee.

Thomas Doehrman, Indianapolis, Indiana, Attorney for Amicus Curiae, Indiana Trial Lawyers Association.

## ON PETITION TO TRANSFER

SHEPARD, Chief Justice.

The defendant in this tort case suffered judgment and then sought credit for money paid by a settling co-defendant who had not been added back under the nonparty provisions of the Comparative Fault Act. Is credit available under these circumstances? We hold it is not.

### Facts and Procedural History

This case arose out of injuries Dennis Mendenhall suffered when he slipped and fell in a parking lot. Skinner and Broadbent Co., Inc. owned the parking lot, although it was used by patrons of Stewart Tire Co. The Mendenhalls filed suit against both Stewart Tire and Skinner. On the first morning of trial, Stewart Tire settled with the Mendenhalls for $15,000, and Stewart was dismissed from the suit. Counsel for Skinner moved orally to credit the amount of the settlement against any potential damages following the jury verdict.

In a jury trial between the Mendenhalls and Skinner, the jury found for the plaintiffs and assessed damages in the amount of $80,000. Pursuant to the Comparative Fault Act, it found Dennis Mendenhall was 50% at fault and Skinner was 50% at fault. Accordingly, the jury rendered a verdict of $40,000 against Skinner and Broadbent.

Skinner moved to set off the final verdict by the amount of Stewart's settlement. The trial court granted the motion and amended the judgment, crediting it with $15,000 the Mendenhalls received in settlement, $5,000 in medical expenses Stewart had paid the Mendenhalls before trial, and $5,000 in medical expenses Skinner had paid the Mendenhalls before trial.[1] This reduced the judgment against Skinner from $40,000 to $15,000.

The Mendenhalls appealed this amendment of the judgment. The Court of Appeals affirmed. *Mendenhall v. Skinner & Broadbent Co.*, 693 N.E.2d 611 (Ind.Ct. App.1998).

### I. Our Common Law Rule

Indiana courts have traditionally followed the one satisfaction principle. By this we have meant that courts should take account of settlement agreements and credit the funds received by the plaintiff through such agreements, pro tanto, toward the judgment against a co-defendants. The principle behind this credit is that the injured party is entitled to only one satisfaction for a single injury and the payment by one joint tortfeasor inures to the benefit of all. *Sanders v. Cole Mun. Fin.*, 489 N.E.2d 117 (Ind.Ct.App.1986). This policy was articulated, of course, long before enactment of the Comparative Fault Act. The issue before us today is thus one of first impression, whether the Act necessitates changes in this common law practice.

The Mendenhalls argue that credits or set-offs, amounts received in settlement, did not survive the Comparative Fault Act. They contend that the Act makes the nonparty defense the defendant's sole method for reducing liability where another party settles. Conversely, Skinner and Broadbent maintains that credits did and should survive the Act. In so asserting, Skinner relies on the Act's language, case law, and public policy. We examine these arguments in turn.[2]

---

1. The Mendenhalls do not dispute the trial court's decision to credit the final verdict with the two $5,000 medical expense payments. (Appellant's Br. at 3–4; R. at 5.)

2. This case does not present the important allied question of whether the Comparative Fault Act affects the traditional way in which our common law gives credits for settlement amounts when the settling defendant *has* been added as a nonparty.

## II. The Comparative Fault Act

■ The Comparative Fault Act, Ind. Code § 34–51–2–1,[3] applies generally to damages actions based in fault that accrued on or after January 1, 1985. The primary objective of the Act was to modify the common law rule of contributory negligence under which a plaintiff was barred from recovery where he was only slightly negligent. *Indianapolis Power v. Brad Snodgrass, Inc.,* 578 N.E.2d 669 (Ind. 1991). The Act seeks to achieve this result through proportional allocation of fault, ensuring that each person whose fault contributed to cause injury bears his or her proportionate share of the total fault contributing to the injury. *See Bowles v. Tatom,* 546 N.E.2d 1188 (Ind.1989).

Under Indiana's comparative fault scheme, a named defendant may assert a "nonparty" defense, seeking to attribute fault to a nonparty rather than to the defendant. Ind.Code Ann. § 34–51–2–14 (West Supp.1999).[4] When a defendant asserts this defense, the court instructs the jury to determine the percentage of fault of each party and "any person who is a nonparty." Ind.Code Ann. § 34–51–2–7(b)(1) (West Supp.1999).[5] A nonparty is: "a person who caused or contributed to cause the alleged injury, death, or damage to property but who has not been joined in the action as a defendant." Ind.Code Ann. § 34–6–2–88 (West Supp.1999).[6] A defendant must affirmatively plead the nonparty defense, and the defendant carries the burden of proof on the defense. Ind.Code Ann. § 34–51–2–15 (West Supp.1999).

Skinner first notes that the Act makes adding a nonparty permissive and not mandatory. Indeed, Ind.Code § 34–51–2–14 says: "In an action based on fault, a defendant may assert as a defense that the damages of the claimant were caused in full or in part by a nonparty." Relying on the statute's permissive nature, Skinner argues that it was not required to assert a nonparty defense under the Act as the sole method of seeking to reduce liability.

■ When examining a statutory provision, we look at the statute as a whole and give common and ordinary meaning to the words employed. *Robinson v. Wroblewski,* 704 N.E.2d 467 (Ind.1998). The term "may" in a statute generally indicates a permissive condition. *Haltom v. Bruner & Meis, Inc.,* 680 N.E.2d 6 (Ind.Ct.App. 1997).

Skinner is obviously correct that the statute leaves to defendants the discretion to add nonparties. On the other hand, while the Act provides defendants with this choice, it says nothing by way of creating or precluding credits.

## III. The Case Law is Not Dispositive

Skinner also contends that case law directs the conclusion that credits are not precluded under the Act where the nonparty is not named at trial. In so asserting, Skinner relies on *Manns v. State Dept. of Highways,* 541 N.E.2d 929 (Ind. 1989).

In *Manns,* we considered the evidentiary use of partial settlement agreements. Plaintiff Manns was injured in an automobile accident and sued two defendants: the driver of the other vehicle, Hintz, and the State of Indiana Department of Highways. *Id.* at 931. Hintz was dismissed before trial after Manns executed a covenant not to sue Hintz in exchange for $125,000. *Id.* At trial, the court permitted the Department of Highways to inform the jury of the settlement agreement with Hintz; however, it would not allow Manns to place the covenant not to sue in evidence. *Id.*

---

3. Formerly Ind.Code § 34–4–33–1.

4. Formerly Ind.Code § 34–4–33–10.

5. Formerly Ind.Code § 34–4–33–5.

6. Prior to amendment in 1995, under Ind. Code § 34–4–33–2, the statute defining non-party read: " 'Nonparty' means a person who is, or may be, liable to the claimant in part or in whole for the damages claimed by the claimant. A nonparty shall not include the employer of the claimant."

On appeal, Manns contended that the trial court erred in permitting the Department to mention the settlement agreement, and the amount received, when he was not allowed to introduce the agreement into evidence. *Id.*

We held that the admission was in error and observed that the existence and amount of a settlement should normally not be presented to a jury. Rather, the trial judge should subtract the amount of the settlement from the jury verdict. *Id.* at 934.[7]

In determining whether credits or set-offs survive the Comparative Fault Act, *Manns* is not particularly helpful. Although we decided *Manns* in 1989, the accident there occurred in 1984, before the enactment of the Comparative Fault Act and the case was not decided under the Act. *See id.*

The case of *Huffman v. Monroe County Community School Corp.*, 588 N.E.2d 1264 (Ind.1992), did arise under the Comparative Fault Act, but our opinion did not directly address credits and set-offs. Rather, *Huffman* explored whether the Act abrogated the common law rule on releases. We discussed the trial judge's power to credit settlement amounts only in dicta, and relied on the language from *Manns* in stating that trial judges had the power and duty to reduce jury verdicts by amounts received in settlement. *Huffman*, 588 N.E.2d at 1267.

For their part, the Mendenhalls cite *Bowles*, 546 N.E.2d 1188, and *Koziol v. Vojvoda*, 662 N.E.2d 985 (Ind.Ct.App. 1996), for the proposition that a nonparty defense is Skinner's sole method of reducing liability. These cases, however, do not support this proposition. Rather, *Bowles* established that a defendant's failure to object to the dismissal of co-defendants or to name dismissed co-defendants as non-parties precluded the trial court from allo-

cating any percentage of fault to them. *Bowles*, 546 N.E.2d at 1189–90. The *Koziol* court answered a logical question following *Bowles*, holding that remaining defendants in tort cases could name original defendants as nonparties even where those defendants had been dismissed from the case pursuant to settlement. *Koziol*, 662 N.E.2d at 989.

## IV. What is the Best Policy?

In the absence of a statutory directive or controlling case law, our decision rests heavily on the sort of policy considerations that have always been a part of the development of common law. Both sides urge differing public policy concerns in our determination of whether credits survive the Comparative Fault Act.[8]

The basis of Skinner and Broadbent's policy argument is the one satisfaction principle. Skinner argues, if non-settling defendants do not receive credits, plaintiffs will be unjustly enriched where a defendant is responsible for an entire verdict although plaintiffs have already received partial or full recovery from settling co-defendants. (Appellee's Br. at 3, 10.) This is the principle our Court of Appeals articulated in its disposition of this case. *See Mendenhall*, 693 N.E.2d at 612 (purpose of credit is to prevent double recovery for the same injury) (citing *Riehle v. Moore*, 601 N.E.2d 365, 371 (Ind.Ct.App. 1992)).

Partly in response, the Mendenhalls assert that we should consider the risks that a plaintiff incurs when settling. Depending on the accuracy of a plaintiff's predictions about the amount of damages a jury may find, or the percentage of fault that the jury will assign to the settling defendant, a plaintiff may suffer a penalty or gain a windfall. Leonard E. Eilbacher, *Comparative Fault and the Nonparty*

---

7. We affirmed the trial court's ruling because it was made under prior precedent, which allowed the admission of such evidence.

8. We are also aided by amicus curiae briefs from the Defense Trial Counsel of Indiana and the Indiana Trial Lawyers Association.

*Tortfeasor,* 17 Ind. L.Rev. 903, 910–11 (1984).

Under our comparative fault system, double recovery may occur where the plaintiff settles, then receives more than the amount of damages calculated at trial.[9] The ability of the court to adjust for such overcompensation is straightforward when the settling defendant is added as a nonparty. With the addition of the nonparty, the jury necessarily provides the court with a visible allocation of fault among the plaintiff, the defendant, and the nonparty. It is then possible to ascertain whether the plaintiff was overcompensated by the settling defendant. When the nonparty is not added by the defendant, the jury cannot provide an allocation of fault to that party and any effort by the court to calculate a credit is more speculative. What the jury has provided in this instance, after all, is an indication of such damages as it thinks have been proximately caused by the litigating defendant, and presumably no more.

We think the ability of courts to implement the common law policy of credit during an age of litigation under the Comparative Fault Act is best served by a rule that obliges defendants to name the settling nonparty if they are to seek credit for the settlement. We reach this conclusion for reasons that follow here.

The nonparty defense is a potent tool for defendants. A defendant likely approaches the question of whether to add a settling nonparty from at least two possible starting points: cases where the defendant believes the settling nonparty likely had some liability and those where they think the settling nonparty did not.

In the first of these two situations, the nonsettling defendant can be expected to make a calculated economic decision based on an assessment of how much the settlement was and an estimate of the liability a jury might find against the settlor. This is not unlike the economic decision the plaintiff makes in deciding whether to settle with one or more defendants.

There are also cases in which the remaining defendant concludes that the settlor had no liability. This is the position Skinner says it occupies.

Skinner argues that requiring it to plead a nonparty defense to obtain credit is inappropriate because Skinner did not have reason to believe that Stewart Tire was in any way liable for Mendenhall's injuries. Indeed, Skinner maintains that it would have been "unethical" to add Stewart Tire as a nonparty where there was no evidence tending to establish Stewart Tire's liability in this matter. Skinner is right to be concerned about the ethics of such a decision, and surely there will be pressure to identify legitimate grounds for claiming the nonparty defense. Still, if there is no evidence of Stewart's liability, then the fact that Stewart Tire was not added as a nonparty leads to a just result. If Stewart Tire was not culpable, but settled merely to avoid the cost of litigation or for some other reason, Skinner loses nothing to which it is rightfully entitled. It either prevails at trial and suffers no judgment, or it loses at trial and incurs liability for the value of that injury shown by the evidence to be its sole responsibility.[10]

---

9. Assume, for example, that the plaintiff sues two defendants, one of whom settles for $65,-000. The litigating defendant adds the settling defendant as a nonparty. At trial, the jury finds $100,000 in damages, allocates no fault to the plaintiff, and assigns 50% fault to the defendant and 50% to the nonparty. In this instance, the plaintiff is overcompensated because the plaintiff will receive $115,000, an amount larger than the awarded damages.

10. Our colleague Justice Boehm notes in his concurrence that there are many other reasons why a defendant might name a nonparty or decide to foreswear doing so. He suggests we litigate on a case-by-case basis whether the various strategic choices made by defense lawyers should result in credit or no credit after trial. We think that this would necessarily be a complicated moving target and that a sounder approach is to let lawyers make the best choices they can with knowledge about predictable future consequences.

Finally, we consider the possible effect of today's ruling on settlement decisions. The policy of the law generally is to discourage litigation and encourage negotiation and settlement of disputes. *Lafayette Tennis Club, Inc. v. C.W. Ellison Builders, Inc.*, 406 N.E.2d 1211 (Ind.Ct. App.1980).

We surmise that this decision will not discourage a defendant from settling. Under our comparative fault system, the jury is asked to determine the fault of each of the parties and nonparties without giving consideration to settlement. Therefore, for the purposes of fault allocation, it does not matter to the litigating defendant whether a settlement occurred or for what amount—the defendant will still actively seek to shift a percentage of fault to the settling tortfeasor and the plaintiff. *See Eilbacher, supra*, at 909. Likewise, defendants considering settlement are not discouraged from settling because, even if they are named as nonparties, they are no longer financially at risk. The benefits of the finality they seek to achieve through settlement seem unaffected.

Further, this resolution does not discourage plaintiffs from settling. Plaintiffs still assume the same risks in making the decision to settle and must still consider whether settlement is beneficial in light of their estimations of liability and anticipated savings in litigation costs. Thus, this rule neither discourages settlement nor penalizes any party, plaintiff or defendant, from having his day in court.

Finally, while the rule we announce today does not discourage settlement, we believe that, at least in a case such as this one, the one satisfaction rule does discourage settlement. Under the one satisfaction rule, the economic effect on the parties in this case is as follows: the Mendenhalls receive $40,000; Stewart pays $20,000; and Skinner pays $20,000. Under the rule we adopt today, the economic effect on the parties is as follows: the Mendenhalls receive $55,000; Stewart pays $20,000; Skinner pays $35,000. As-

suming perfect information, the Mendenhalls are less likely to settle under the one satisfaction rule (they receive $15,000 under it), while Skinner is also less likely to settle under the one satisfaction rule (it pays $15,000 less under it). At least on the facts of today's case, we believe that our holding makes settlement more likely than it is under the one satisfaction rule—plaintiffs do not risk losing the value of a portion of their settlement and defendants are not encouraged to go to trial in an attempt to reduce their liability by the amount of another's settlement.

We conclude that the one satisfaction rule and the benefits of settlement are best advanced to affording litigating defendants a credit where a thorough allocation of damages by the jury provides the court with a respectable basis upon which to adjust a judgment to avoid a double credit. Thus, to request a credit, the litigating defendant must add the settling defendant as a nonparty under the Comparative Fault Act. Under the facts presented here, therefore, Skinner should not be entitled to receive a credit for the amount of the Mendenhall's settlement.

### Conclusion

Thus, the trial court here erred in granting Skinner's motion to amend judgment to credit the verdict with the amount Skinner paid the Mendenhalls in settlement. We reverse and remand with instructions to adjust the judgment accordingly.

DICKSON, SULLIVAN, and RUCKER, JJ., concur.

BOEHM, J., concurs in result with opinion.

BOEHM, Justice, concurring in result.

As I understand it, the majority holds, and I agree, that if a party settles and becomes a nonparty, in order to get credit for the settlement amounts the remaining defendants must assert a nonparty defense based on the settling defendant's potential liability.

The majority, however, does not limit itself to the situation before the court where a named defendant has settled and becomes a nonparty. Rather, the majority announces a general rule that any defendant seeking credit for another's settlement payments must have asserted a nonparty defense. This broader rule seems to me to raise some fairly complex problems that are better left for another day.

Consider the situation where the third party (TP) has not been named as a defendant at the time the named defendant (D) is obligated to assert any nonparty defense. D must assess whether there are any other potential defendants and then decide whether to assert a nonparty defense. If D does assert it, a likely consequence is that TP will be named by plaintiff (P) as a defendant and become an antagonistic co-defendant who will considerably complicate the case and perhaps prejudice a successful defense by D. On the other hand, if D does not assert the defense, D forfeits any contribution by TP as a credit against D's liability. It seems likely that under this rule some defendants, or their attorneys, will be intimidated by fear of being judged in hindsight and will assert a third party defense even though they are not inclined to do so.

I expect there are more angles to this. At a very minimum, unless TP has already settled at the time D must assert a nonparty defense, the tactical considerations from the defense's point of view are not usually those identified by the majority, 728 N.E.2d at 143–45, as an assessment of the likely attribution of liability to TP. Rather, many defendants will focus principally on an assessment of the risk of TP's becoming an adversary versus the potential benefit of dividing the exposure. Often D must make this choice without knowing the reasons why TP is not a defendant. These could be many. One of them may be the fact that TP has already settled before suit was filed. D may or may not be able to learn whether this has happened, and if so for how much, before the deadline for asserting or risking waiver of a nonparty defense.

In this case, Skinner and Broadbent says it took the view that Stewart had no liability and therefore Skinner could not ethically assert a nonparty defense. This is certainly a defensible position under the Rules of Professional Responsibility. It seems to me to be a poor policy to force conflicts between the client's financial interest and the lawyer's professional obligations by requiring D to assert a position with which it disagrees in order to preserve its right to setoff. From the client's point of view, the attorney's ethical concerns prohibit the assertion of a nonparty defense and result in giving away the client's money if a third party later settles and there is no setoff under the rule of this case. Asserting a nonparty defense in the context where P has already sued TP is less problematic. D at least has P's word for it that there is a basis for a claim against TP.

In short, I think the net result of the majority's broad ruling may be more multiparty litigation. This is not a goal to be fostered. I would restrict today's holding to situations where TP has been dismissed with prejudice, and perhaps also where D is charged with knowledge that TP has been given a release. We can resolve this issue in other contexts as litigation arises and we deal with real sets of facts.

I also do not understand the claim that this rule fosters settlement between P and the remaining defendant. The majority says P is more likely to settle for a net $65,000 than a net $40,000. This is presumably true if P's claim is of equal value under each scenario. But that is not the case. The "one satisfaction" rule applies to judgments where the parties have not reached an agreement, not to agreed settlements. Where the parties have to reach an agreement, they will do so on the basis of their relative present dollar valuations of the claim after costs of litigation and after any setoffs the law will allow. In the future, every set of litigants will live under

a regime that either does or does not produce a setoff against a judgment against D for amounts received from TP. Resolution of that legal issue affects the value of P's claim against D and the amount of D's net exposure. Assume, as the majority does, that D and P have perfect information and value the total claim at $X. If the law gives D a setoff for the $Y received from TP, then P's remaining claim is worth $X minus $Y. If not, it is worth $X. Either way, both parties will know that and bargain on that assumption. P has no reduced incentive to settle a claim for less because the claim might be worth more under a different legal rule. Similarly, D has no incentive to pay more than the claim would be worth if the law were different. As a result, resolution of this issue seems to me to be a null factor in terms of fostering agreed resolutions between P and D.

The rule the majority announces may be of some value in promoting the initial settlement between P and TP, because P will be able to retain that amount and not suffer reduction of any judgment P may later obtain from D. This is another way of saying that multiparty litigation can produce a sum of the parts result for P that is greater than the whole. It is not obvious that this is a policy goal that should be furthered because it encourages adding fringe parties with marginal ultimate exposure. Parties who see their costs of litigation as a major portion of their ultimate exposure are often more inclined to settle. This, in turn, adds proportionally more to the transactional costs of resolving the litigation than it does to the transfer of payments from wrongdoers to injured parties. P's incremental incentive to settle with TP is also counterbalanced by the fact that the total cost to D of going to trial and losing is higher if the "one satisfaction" rule does not apply. As a general proposition, the effect of this will be that the cost of litigation is a smaller percentage of D's total exposure and also a smaller percentage of P's potential net recovery. That reduces the incentive of both

to settle for the same reason that increased costs of litigation raise that incentive.

Thus, although the majority's rule does add to the net recovery of P, and may encourage P to settle with TP, it is not without a cost to the overall goal of simplifying litigation. It does not seem to me that there is a parallel effect on TP's willingness to settle with P. Unless TP has some unusual indemnity or recoupment agreement with D or P or both, it will be a matter of indifference to TP whether or not D gets a setoff for the amounts P receives from TP.

This rule does result in a bigger net transfer to P if no third party defense is asserted. Another way to say the same thing is that it penalizes D for not asserting a third party defense. For the reasons stated, I believe there is a significant risk that it will do so unfairly in some circumstances. All of the foregoing, and a great deal of the majority opinion, ultimately turns on speculation as to how parties will behave in settings that will vary with the number of parties, the amount of the exposure of each, the procedural posture of the case, who has asserted what against whom, and undoubtedly other factors. I would leave these to be resolved on a case-by-case basis as they arise.