R.L. McCOY, INC., Appellant
(Defendant Below),

v.

Michael and Amy JACK, Appellees
(Plaintiffs Below).

No. 49S02–0112–CV–658.

Supreme Court of Indiana.

July 24, 2002.

Cory Brundage, Judy S. Okenfuss, Indianapolis, IN, Attorneys for Appellant.

Harry A. Wilson, Jr., Indianapolis, IN, Attorney for Appellees.

Thomas C. Doehrman, Courtney E. McGovern, Indianapolis, IN, Amicus Curiae Indiana Trial Lawyers Association.

## ON PETITION TO TRANSFER

BOEHM, Justice.

In *Mendenhall v. Skinner & Broadbent Co., Inc.,* 728 N.E.2d 140 (Ind.2000), this Court held that under the Comparative Fault Act no credit should be given to non-settling defendants for amounts paid for the same injury by settling defendants who were not non-party defendants at trial. This case presents the question explicitly left unresolved by that opinion: under Indiana's comparative fault regime, where defendants are severally liable, does a defendant who goes to trial get credit for

amounts paid by nonparty defendants who settled the plaintiffs' claims against them? We hold that they do not.

### Factual and Procedural Background

On November 8, 1996, Michael Jack attempted to pass a semi tractor trailer driving south on Interstate 69 in Steuben County. The road at that point was under construction. An excavation abutted the left lane, and the yellow line marking the left edge of the road was not visible. Jack's front tire fell into the excavation and the vehicle left the roadway, hit an orange construction barrel, and then struck the exposed portion of the northbound lanes. Jack suffered a spinal cord injury resulting in paraplegia when he was ejected as the vehicle rolled from the impact.

Jack and his wife, Amy, sued the State of Indiana, Indiana Department of Transportation ("INDOT"), R.L. McCoy, Inc. ("McCoy"), the contractor hired by INDOT for the project, and S.E. Johnson Companies, a subcontractor of McCoy.[1] Before trial, the Jacks and McCoy entered into a contract usually referred to as a "loan receipt" or "loan repayment" agreement. Under that arrangement, the Jacks released McCoy in return for a payment of $1.5 million. Repayment of a portion of that sum was governed by the following provisions:

7. The parties acknowledge that to the extent an as yet unquantified portion of the Settlement Payment would otherwise constitute a credit, setoff, or partial satisfaction to the benefit of any other defendant if it were not a loan, that as yet unquantified sum is a loan. Accordingly, to the extent that:

a. The settlement payment exceeds a final non-party verdict (total damages suffered by the plaintiffs multiplied by the percentage at fault, if any, on the part of McCoy (against McCoy))

AND

b. If such excess of the settlement payment over the amount of the non-party verdict against McCoy would otherwise operate to reduce the amount which S.E. Johnson, Inc., the Indiana Department of Transportation, or the State of Indiana or any other defendant against whom a final jury verdict is rendered is obligated to pay as a result of the final verdict in said action, after all appeals have either been abandoned or exhausted, if it were not a loan,

THEN

The amount of the excess which would otherwise reduce the amount another defendant is obligated by a verdict to pay if the excess were not considered a loan, must be repaid by Jack to McCoy.

The Jacks proceeded to trial against the State and Johnson. Pursuant to the Comparative Fault Act, Ind.Code § 34–51–2–14, Johnson asserted a nonparty defense against McCoy. The jury awarded Michael Jack $5,000,000 and Amy $400,000 before allocating the percentages of fault as follows: Michael Jack, 50 percent; State of Indiana, 25 percent; Johnson, 15 percent; and McCoy, 10 percent. The Jacks were precluded from recovery against the State because contributory negligence remains a complete defense to claims under the Tort Claims Act. I.C. § 34–51–2–2.

Under this verdict, Johnson was liable to the Jacks for $810,000 (15% of $5.4 million). Johnson moved for a setoff[2] of

---

1. The Jacks also filed suit against Three Rivers Barricade & Equipment Co., Inc., and RQAW. Corporation, but those claims were dismissed on summary judgment.

2. The words "credit" and "setoff" are used interchangeably in this opinion.

$960,000 (the excess of McCoy's payment of $1.5 million over McCoy's liability of $540,000 under the jury's verdict). McCoy in turn moved for an order requiring the Jacks to repay this $960,000 to it. McCoy argued that this amount would constitute a credit benefiting Johnson if it were not a loan and thus must be repaid to McCoy, under the quoted paragraph 7 of the settlement agreement. The trial court denied both motions without discussion.

Both Johnson and McCoy appealed. In separate opinions, the same panel of the Court of Appeals affirmed the denial of Johnson's motion but reversed the denial of McCoy's. The Court of Appeals concluded that McCoy's $960,000 excess payment would have been a credit against Johnson's liability if payment by McCoy to the Jacks were not a loan. Therefore, the Jacks were obligated to repay the $960,000 to McCoy, and Johnson should receive no credit. *See S.E. Johnson Cos., Inc. v. Jack,* 752 N.E.2d 72 (Ind.Ct.App.2001), *trans. denied; R.L. McCoy, Inc. v. Jack,* 752 N.E.2d 67 (Ind.Ct.App.2001). The Jacks petitioned this Court for transfer. They contend that Indiana law would not allow a credit to Johnson for McCoy's settlement payment, were it not a loan, and therefore the conditions for repayment to McCoy have not been met. We agree.

### I. Credits/Setoffs in Indiana

■ Both parties agree that the condition for repayment to McCoy found in paragraph 7(a) of the settlement agreement was met by the jury's finding that McCoy was liable to the Jacks to the extent of $540,000, $960,000 less than the $1.5 million payment. The only issue is whether the additional condition found in paragraph 7(b) was also met. That issue turns on whether, in light of Indiana's Comparative Fault Act, that $960,000 would constitute a credit against Johnson's liability if McCoy had simply paid the amount to the Jacks in settlement, and had not entered into a loan receipt agreement. McCoy contends this issue was resolved in favor of credits in *Mendenhall v. Skinner & Broadbent Co., Inc.,* 728 N.E.2d 140 (Ind.2000). However, no party in *Mendenhall* raised the issue of the availability of credits generally under comparative fault. *Mendenhall* rejected credit for amounts from parties who are not named as nonparty defendants but, in footnote 2 of that opinion, expressly reserved the question of whether the Act "affects the traditional way in which our common law gives credits for settlement amounts when the settling defendant has been added as a nonparty." *Id.* at 141 n. 2.

We have previously stated that credits, at common law, were a tool to avoid overcompensation of plaintiffs. *Id.* at 143–44. Equally important, credits were a tool to avoid a single defendant's bearing too much responsibility for the plaintiff's damages. These rules were developed in the pre-comparative fault era of joint and several liability. Under that common law regime, each defendant whose negligence contributed to the plaintiff's loss was liable for the entire amount of damages. Without credits for settlement payments by the other defendants, a defendant could be liable for an amount greatly in excess of its fair share, and the result was to overcompensate the plaintiff. There were no nonparty defenses, and the jury was not aware of an absent tortfeasor's settlement. Credits insured that the defendants at trial would not have to pay more than their collective share of liability, and overcompensate the plaintiff, simply because the jury was unable to consider the fault of others.

In 1985, Indiana's comparative fault system addressed these problems in two respects. First, it replaced joint and several liability with several liability, leaving each

defendant responsible only for its share of the total liability. *Control Techniques, Inc. v. Johnson,* 762 N.E.2d 104, 109 (Ind. 2002); Matthew Bender, 2 *Comparative Negligence* § 13.30[3][c] (2001) ("The Indiana statute expressly incorporates several liability."). Second, it permitted the assertion of a nonparty defense, allowing a defendant to prove the negligence of an absent or settling tortfeasor. I.C. § 34–51–2–15. Thus the jury's apportionment of fault now provides a more complete picture of the relative responsibility for the plaintiff's injuries.

All of this led us in *Mendenhall* to hold that credits were no longer warranted in cases where the remaining defendant at trial did not assert a nonparty defense against a settling tortfeasor. In *Mendenhall* we pointed out that the remaining defendant in that case already had "a potent tool" to limit its liability—the nonparty defense. *Mendenhall,* 728 N.E.2d at 144. Allowing that defendant to resort to a common law doctrine to further reduce its liability made little sense "in light of the modernization of tort law represented by the adoption of comparative negligence." Bender, *supra,* at § 13.50[2][a] (discussing the common law rule of releases that the release of one amounted to the release of all defendants). That same logic applies in this case as well.

As one treatise notes:

> If defendants are severally but not jointly liable, most of the difficult release problems are avoided. The release of a severally liable defendant, whether executed before trial or after judgment, should have no effect upon the liability of the other defendants. The liability of each defendant stands independently and is unaffected by that of other defendants.

*Id.* at § 13.50[2][c] (emphasis added). That treatise notes that problems may remain in several liability jurisdictions where the fault of absent tortfeasors is not considered. *Id.* But the nonparty defense eliminates those problems in Indiana. Johnson raised a nonparty defense that permitted it to prove McCoy's negligence, and the jury assigned 15 percent of the fault to Johnson and 10 percent to McCoy. Thus the nonparty defense already accomplished the limitation of Johnson's liability that a credit would otherwise have achieved.

Were credits still available under comparative fault, Johnson would lower its liability to an amount less than the jury's determination. Indeed, had Johnson succeeded in its attempt to have the amount it described as McCoy's $960,000 "overpayment" credited in its favor, Johnson's liability would have been eliminated despite its being found at greater fault than McCoy. Thus, elimination of credit requires the comparative fault defendant to pay for its own share, but no more. Nor is the plaintiff "overcompensated." In a comparative fault regime, the notion that a plaintiff is overcompensated when he or she settles with a defendant for more than a jury later awards takes too narrow a view of what a settlement represents. There is no "overpayment" if the parties agree on the dollar value of a several liability claim against a given defendant, even if a jury reaches a different result. A settlement payment normally incorporates an assessment of the exposure to liability. But a settlement also reflects several other considerations, including the parties' desires to avoid the expense and effort of litigation and the tactical effect of eliminating a defendant and its counsel from trial. In *McDermott, Inc. v. AmClyde & River Don Castings Ltd.,* 511 U.S. 202, 215, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994), the United States Supreme Court rejected a *pro tanto* rule in admiralty tort cases in

favor of a proportionate share approach for this reason. It stated:

> The law contains no rigid rule against overcompensation. . . . [W]e must recognize that settlements frequently result in the plaintiff's getting more than he would have been entitled to at trial. Because settlement amounts are based on rough estimates of liability, anticipated savings in litigation costs, and a host of other factors, they will rarely match exactly the amounts a trier of fact would have set. It seems to us that a plaintiff's good fortune in striking a favorable bargain with one defendant gives other defendants no claim to pay less than their proportionate share of the total loss.

*Id.* at 219–20, 114 S.Ct. 1461. Our comparative fault system contemplates similar results. *See* Bender, *supra*, at § 13.50[2][c] (in several liability systems, "[t]he risks of settlement are borne solely by the settling parties"). McCoy received the peace of mind of eliminating the litigation. And although the Jacks received more compensation for McCoy's liability than they would have at trial, they also bore the risk of receiving less. The point is that the settlement between McCoy and the Jacks had no bearing on Johnson's obligation to pay according to its liability, as determined by the jury. As *Mendenhall* put it, a defendant who wants to limit its liability at trial has the tool to do so: the nonparty defense.

McCoy points to dicta in *Mendenhall* that suggests credits advanced the "one satisfaction" rule and prevent "double recovery" by plaintiffs who might settle for a larger amount with one defendant than a jury might later conclude that defendant was responsible. *Mendenhall*, 728 N.E.2d at 144. This was true in a joint and several liability regime. But where each defendant is severally liable, a settlement by one of them represents the bargained value of the claims against that defendant. Unlike a joint and several liability regime, no other defendant is liable for that claim, and none has a claim to benefit from its overvaluation by the settling defendant or undervaluation by the plaintiff as compared to the jury's assessment.

## II. The Contract Between McCoy and the Jacks

■ Because Johnson would not have received a credit had the agreement between the Jacks and McCoy not been a loan, the remaining issue is whether the agreement requires repayment by the Jacks of the $960,000 that exceeded the jury's determination of McCoy's liability. We conclude that it does not.

McCoy contends that if credits did not survive the Comparative Fault Act, then the entire settlement agreement is meaningless because the repayment provision could never be triggered. It alludes to explanatory language in the contract to support its contention that the purpose of the contract was to eliminate any overpayment by McCoy. There may be circumstances when a plaintiff would enter into such an agreement even though it produces a "heads we lose, tails we break even" deal for them by capping the defendant's liability at the lesser of the jury award or the settlement amount. In any event, McCoy concedes that repayment, if it is to occur at all, depends wholly on the provisions of paragraph 7. The parties are bound to the terms of that paragraph, and this Court is not free to alter them to conform to McCoy's understanding of their legal effect. *Estate of Spry v. Greg & Ken, Inc.*, 749 N.E.2d 1269, 1275–76 (Ind. Ct.App.2001) ("[R]eformations for mistakes are only available if they are mistakes of fact, not if they are mistakes of law. . . . [The] mistake was regarding the effect of the release, not its terms. Conse-

quently, we may not reform the release . . .") (citation omitted). By its terms, the contract contemplates repayment to McCoy only to the extent it comes out of Johnson's pocket, not the Jacks'. Therefore, the Jacks are not obligated to repay any amount to McCoy.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.