

ATTORNEY FOR APPELLANT

Nicholas C. Deets
Hovde Dassow & Deets LLC
Indianapolis, Indiana


ATTORNEY FOR AMICUS CURIAE
INDIANA TRIAL LAWYERS
ASSOCIATION

Edward B. Mulligan V
Cohen & Malad, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Nelson Nettles
J. Kirk LeBlanc
LeBlanc Nettles Davis
Brownsburg, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Shelton, as Personal
Representative of the Estate of
Sharon K. Clearwaters,

*Appellant-Plaintiff,*

v.

Kroger Limited Partnership I,

*Appellee-Defendant.*

August 4, 2016

Court of Appeals Case No.
49A02-1601-CT-75

Appeal from the Marion Superior
Court

The Honorable James B. Osborn,
Judge

Trial Court Cause No.
49D14-1312-CT-43909

**Bradford, Judge.**

# Case Summary

In December of 2012, Sharon Clearwaters died as a result of medical complications after taking Levofloxacin. In November of 2013, Appellant-Plaintiff David Shelton, in his position as personal representative for Clearwaters's estate, filed a proposed complaint with the Indiana Department of Insurance ("IDI") against Appellee-Defendant Kroger Limited Partnership I, John Doe, M.D. ("Dr. Doe") and ABC, Inc. ("ABC").[1] After receiving notice from the IDI that only Dr. Doe and ABC were qualified providers under the Indiana Medical Malpractice Act ("Medical Malpractice Act"), Shelton filed a wrongful death complaint in the trial court against Kroger, Dr. Doe and ABC. In this complaint, Shelton alleged that in light of other medications which Clearwaters took in connection with a chronic heart condition, Dr. Doe and ABC were negligent in prescribing Clearwaters with Levofloxacin and Kroger, the pharmacy which filled the prescription, was negligent in filling the prescription. Dr. Doe and ABC were eventually dismissed from the underlying trial court action after settling with Shelton.

Following the dismissal of Dr. Doe and ABC, Kroger sought and received permission to amend its answer to Shelton's complaint to assert a non-party

---

[1] ABC is Dr. Doe's employer. Dr. Doe and ABC were named anonymously in the trial court action as required by the Indiana Medical Malpractice Act. *See* Ind. Code § 34-18-8-7. We will therefore refer to Dr. Doe and ABC in their anonymous form.

defense as to Dr. Doe and ABC. Kroger also filed a motion for partial summary judgment in which it sought a judicial ruling that it was entitled to a credit or set-off for Shelton's settlement with Dr. Doe and ABC. Shelton opposed Kroger's motion, arguing that under the Indiana Comparative Fault Act, Kroger was not entitled to a credit or set-off and that Kroger's only remedy was to name Dr. Doe and ABC as non-parties and to ask the jury to apportion them fault. The trial court subsequently issued an order granting Kroger's motion for partial summary judgment. Concluding that the trial court erred in granting Kroger's motion for partial summary judgment, we reverse and remand the matter to the trial court with instructions.

# Facts and Procedural History

The underlying facts leading to this appeal are largely undisputed. These facts demonstrate that Clearwaters visited Dr. Doe on December 12, 2012, complaining of head and chest congestion, a dry cough, a low-grade fever, and chills. Upon examining Clearwaters, Dr. Doe diagnosed her with acute bronchitis. Despite knowing that Clearwaters suffered from a chronic heart condition for which she was taking Amiodarone and Warfarin, Dr. Doe prescribed Clearwaters with Levofloxacin.[2] Dr. Doe called the prescription for the Levofloxacin into a Kroger pharmacy, which filled the prescription. On

---

[2] Levofloxacin is known by those in the medical profession to be contraindicated for a patient also taking Amiodarone and Warfarin due to the potential for a drug interaction which would take the patient's heart out of rhythm.

December 12, 2012, Clearwaters went into cardiopulmonary arrest and died after taking the Levofloxacin.

[4] On November 21, 2013, Shelton, in his position as personal representative for Clearwaters's estate, filed a proposed complaint for damages with the IDI against Kroger, Dr. Doe and ABC. On December 11, 2013, the IDI notified Shelton that Dr. Doe and ABC were qualified providers under the Medical Malpractice Act. After being notified that Kroger was not a qualified medical provider subject to the Medical Malpractice Act, Shelton filed a wrongful death complaint in the trial court against Kroger, Dr. Doe and ABC.

[5] In August of 2014, Dr. Doe and ABC agreed to settle Shelton's claims, providing Shelton access to the Indiana Patients Compensation Fund ("IPCF"). Shelton then filed a petition for payment from the IPCF. Shelton subsequently settled his claims against Dr. Doe, ABC, and the IPCF after which the action pending before the IDI was dismissed with prejudice. On November 21, 2014, Dr. Doe and ABC were dismissed from the underlying trial court action.

[6] Following the dismissal of Dr. Doe and ABC, Kroger moved it amend its answer to Shelton's complaint to assert a non-party defense as to Dr. Doe and ABC. Kroger's amended answer asserted the following: "Any damages claimed by the Plaintiff were solely caused by the negligent acts of the following non-parties: [ABC] and [Dr. Doe]." Appellant's App. p. 37. The trial court granted Kroger's request on December 30, 2014.

[7] On June 11, 2015, Kroger filed a motion for partial summary judgment in which it sought a judicial ruling that it was entitled to a credit or set-off for Shelton's settlement with Dr. Doe, ABC, and the IPCF. Shelton opposed Kroger's motion, arguing that under Indiana's Comparative Fault Act, Kroger was not entitled to a credit or set-off and that Kroger's only remedy was to name Dr. Doe and ABC as non-parties and to ask the jury to apportion them fault. The trial court subsequently issued an order granting Kroger's motion for partial summary judgment. This interlocutory appeal follows.

# Discussion and Decision

## A. Standard of Review

[8] The standard of review for a partial summary judgment is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Allen v. Great American Reserve Ins. Co.*, 766 N.E.2d 1157, 1161 (Ind. 2002). Where the challenge to the trial court's summary judgment ruling presents only legal issues, not factual ones, the issues are reviewed *de novo*. *Robertson v. B.O.*, 977 N.E.2d 341, 343 (Ind. 2012). Similarly, a question of statutory interpretation is subject to our *de novo* review. *Pinnacle Prop. Dev. Grp., LLC v. City of Jeffersonville*, 893 N.E.2d 726, 727 (Ind. 2008).

*Ballard v. Lewis*, 8 N.E.3d 190, 193 (Ind. 2014) (emphasis on words "*de novo*" in original). "When examining a statutory provision, we look at the statute as a whole and give common and ordinary meaning to the words employed."

*Mendenhall v. Skinner & Broadbent Co.*, 728 N.E.2d 140, 142 (Ind. 2000) (citing *Robinson v. Wroblewski*, 704 N.E.2d 467 (Ind. 1998)). "The term 'may' in a statute generally indicates a permissive condition." *Id.* (citing *Haltom v. Bruner & Meis, Inc.*, 680 N.E.2d 6 (Ind. Ct. App. 1997)).

## B. The Traditional Common Law Rule and the Comparative Fault Act

Indiana courts have traditionally followed the one satisfaction principle. By this we have meant that courts should take account of settlement agreements and credit the funds received by the plaintiff through such agreements, *pro tanto*, toward the judgment against a co-defendants. The principle behind this credit is that the injured party is entitled to only one satisfaction for a single injury and the payment by one joint tortfeasor inures to the benefit of all. *Sanders v. Cole Mun. Fin.*, 489 N.E.2d 117 (Ind. Ct. App. 1986). This policy was articulated, of course, long before enactment of the Comparative Fault Act.

****

The Comparative Fault Act, Ind. Code § 34-51-2-1, applies generally to damages actions based in fault that accrued on or after January 1, 1985. The primary objective of the Act was to modify the common law rule of contributory negligence under which a plaintiff was barred from recovery where he was only slightly negligent. *Indianapolis Power v. Brad Snodgrass, Inc.*, 578 N.E.2d 669 (Ind. 1991). The Act seeks to achieve this result through proportional allocation of fault, ensuring that each person whose fault contributed to cause injury bears his or her proportionate share of the total fault contributing to the injury. *See Bowles v. Tatom*, 546 N.E.2d 1188 (Ind. 1989).

Under Indiana's comparative fault scheme, a named defendant may assert a "nonparty" defense, seeking to attribute fault to a nonparty rather than to the defendant. Ind. Code [ ] § 34-51-2-14

[ ].  When a defendant asserts this defense, the court instructs the jury to determine the percentage of fault of each party and "any person who is a nonparty."  Ind. Code [ ] § 34-51-2-7(b)(1) [ ].  A nonparty is: "a person who caused or contributed to cause the alleged injury, death, or damage to property but who has not been joined in the action as a defendant."  Ind. Code [ ] § 34-6-2-88 [ ].  A defendant must affirmatively plead the nonparty defense, and the defendant carries the burden of proof on the defense.  Ind. Code [ ] § 34-51-2-15 [ ].

*Id*. at 141-42 (emphasis on words "*pro tanto*" added, brackets added, footnotes omitted).  In *Mendenhall*, the Indiana Supreme Court held that the Comparative Fault Act is best served by a rule that obliges defendants to name the settling nonparty if they are to seek "credit" or apportionment of fault at trial.  *Id*. at 144.

[10]  In *R.L. McCoy, Inc. v. Jack*, the Indiana Supreme Court expanded upon its holding in *Mendenhall*, providing as follows:

> We have previously stated that credits, at common law, were a tool to avoid overcompensation of plaintiffs.  [*Mendenhall*, 728 N.E.2d at 143-44].  Equally important, credits were a tool to avoid a single defendant's bearing too much responsibility for the plaintiff's damages.  These rules were developed in the pre-comparative fault era of joint and several liability.  Under that common law regime, each defendant whose negligence contributed to the plaintiff's loss was liable for the entire amount of damages.  Without credits for settlement payments by the other defendants, a defendant could be liable for an amount greatly in excess of its fair share, and the result was to overcompensate the plaintiff.  There were no nonparty defenses, and the jury was not aware of an absent tortfeasor's settlement.  Credits insured that the defendants at trial would not have to pay

more than their collective share of liability, and overcompensate the plaintiff, simply because the jury was unable to consider the fault of others.

In 1985, Indiana's comparative fault system addressed these problems in two respects. First, it replaced joint and several liability with several liability, leaving each defendant responsible only for its share of the total liability. *Control Techniques, Inc. v. Johnson*, 762 N.E.2d 104, 109 (Ind. 2002); Matthew Bender, 2 Comparative Negligence § 13.30[3][c] (2001) ("The Indiana statute expressly incorporates several liability."). Second, it permitted the assertion of a nonparty defense, allowing a defendant to prove the negligence of an absent or settling tortfeasor. I.C. § 34-51-2-15. Thus the jury's apportionment of fault now provides a more complete picture of the relative responsibility for the plaintiff's injuries.

All of this led us in *Mendenhall* to hold that credits were no longer warranted in cases where the remaining defendant at trial did not assert a nonparty defense against a settling tortfeasor. In *Mendenhall* we pointed out that the remaining defendant in that case already had "a potent tool" to limit its liability—the nonparty defense. *Mendenhall*, 728 N.E.2d at 144. Allowing that defendant to resort to a common law doctrine to further reduce its liability made little sense "in light of the modernization of tort law represented by the adoption of comparative negligence." Bender, *supra*, at § 13.50[2][a] (discussing the common law rule of releases that the release of one amounted to the release of all defendants). That same logic applies in this case as well.

As one treatise notes:

> If defendants are severally but not jointly liable, most of the difficult release problems are avoided. The release of a severally liable defendant, whether executed before trial or after judgment, should have no effect upon the liability of the other defendants.

> The liability of each defendant stands independently and is unaffected by that of other defendants.

*Id.* at § 13.50[2][c] (emphasis added). That treatise notes that problems may remain in several liability jurisdictions where the fault of absent tortfeasors is not considered. *Id.* But the nonparty defense eliminates those problems in Indiana.

772 N.E.2d 987, 989-90 (Ind. 2002).

[11] The Indiana Supreme Court further explained,

> elimination of credit requires the comparative fault defendant to pay for its own share, but no more. Nor is the plaintiff "overcompensated." In a comparative fault regime, the notion that a plaintiff is overcompensated when he or she settles with a defendant for more than a jury later awards takes too narrow a view of what a settlement represents. There is no "overpayment" if the parties agree on the dollar value of a several liability claim against a given defendant, even if a jury reaches a different result. A settlement payment normally incorporates an assessment of the exposure to liability. But a settlement also reflects several other considerations, including the parties' desires to avoid the expense and effort of litigation and the tactical effect of eliminating a defendant and its counsel from trial. In *McDermott, Inc. v. AmClyde & River Don Castings Ltd.*, 511 U.S. 202, 215, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994), the United States Supreme Court rejected a *pro tanto* rule in admiralty tort cases in favor of a proportionate share approach for this reason. It stated:
>
> > The law contains no rigid rule against overcompensation.... [W]e must recognize that settlements frequently result in the plaintiff's getting more than he would have been entitled to at trial. Because settlement amounts are based on rough estimates of liability, anticipated savings in litigation

costs, and a host of other factors, they will rarely match exactly the amounts a trier of fact would have set. It seems to us that a plaintiff's good fortune in striking a favorable bargain with one defendant gives other defendants no claim to pay less than their proportionate share of the total loss.

*Id*. at 219-20, 114 S.Ct. 1461. Our comparative fault system contemplates similar results. *See* Bender, *supra*, at § 13.50[2][c] (in several liability systems, "[t]he risks of settlement are borne solely by the settling parties"). McCoy received the peace of mind of eliminating the litigation. And although the Jacks received more compensation for McCoy's liability than they would have at trial, they also bore the risk of receiving less. The point is that the settlement between McCoy and the Jacks had no bearing on Johnson's obligation to pay according to its liability, as determined by the jury. As *Mendenhall* put it, a defendant who wants to limit its liability at trial has the tool to do so: the nonparty defense.

*Id*. at 990-91.

## C. Applicability of the Comparative Fault Act to the Instant Matter

[12] Shelton contends that the trial court erred in granting summary judgment in favor of Kroger. In making this contention, Shelton argues that under Indiana's Comparative Fault Act, Kroger was not entitled to receive a credit or set-off in relation to Shelton's settlement with Dr. Doe, ABC, and the IPCF. Shelton further argues that the only way by which Kroger could seek to limit its potential liability at trial would be to name Dr. Doe and ABC as non-parties and to ask the jury to apportion them fault.

[13] For its part, Kroger argues that the trial court properly granted its motion for partial summary judgment because the Comparative Fault Act does not apply to cases involving claims of medical malpractice. In support, Kroger cites to the Indiana Supreme Court's decision in *Indiana Department of Insurance v. Everhart*, 960 N.E.2d 129 (Ind. 2012) and our opinion in *Palmer v. Comprehensive Neurologic Services, P.C.*, 864 N.E.2d 1093 (Ind. Ct. App. 2007). As is discussed in both *Everhart* and *Palmer*, Indiana Code section 34-51-2-1(b)(1) expressly states that the Comparative Fault Act does not apply to an action brought against a qualified health care provider for medical malpractice. In addition, the Indiana Supreme Court held in *Everhart* that the law allowing for credits and set-offs remains good law for cases that involve joint tortfeasors but fall outside the Comparative Fault Act. 960 N.E.2d at 139.

[14] In this case, the IDI determined that Kroger was not a qualified health care provider under the Medical Malpractice Act. Kroger, therefore, was not exempted from the Comparative Fault Act. As such, both *Everhart* and *Palmer* can be easily distinguished from the instant matter because in both cases, the party seeking the credit or set-off was a qualified health care provider who was being sued for malpractice and, thus, was exempt from the Comparative Fault Act.

[15] Because Kroger was not exempted from the Comparative Fault Act, Kroger was not entitled to receive a credit or set-off with relation to Shelton's settlement with Dr. Doe, ABC, and the IPCF. *See R.L. McCoy*, 772 N.E.2d at 989-91; *Mendenhall*, 728 N.E.2d at 144-45. As such, we conclude that the trial

court erred in granting Kroger's motion for partial summary judgment and reverse the trial court's order granting said motion. We further instruct the trial court that on remand, Kroger may only seek to limit its potential liability through its asserted non-party defense.

[16] The judgment of the trial court is reversed and the matter remanded to the trial court with instructions.

Pyle, J., and Altice, J., concur.